# NORTHERN PACIFIC RAILROAD COMPANY *v.* FREEMAN.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 241. Argued and submitted April 13, 1899. — Decided May 15, 1899.

A highway in the State of Washington crossed the Northern Pacific Railroad at about right angles. It approached the railroad through a deep descending cut, and the track was not visible to one driving down until he had reached a point about forty feet from it. Freeman was driving a pair of horses in a farm wagon down this descent. When he emerged from the cut and reached the point from which an approaching train was visible he was looking ahead at his horses. A train was coming up. The conductor, the engineer and the fireman testified that the whistle was blown. Three witnesses, who were not in the employ of the railroad, and who were in a position to have heard a whistle if it had been blown, testified that they did not hear it. When Freeman became conscious of the approaching train he tried to avoid it; but it was too late, and he was struck by the train and was killed. So far as there was any oral testimony on the subject, it tended to show that Freeman neither stopped, looked nor listened before attempting to cross the track. *Held,* That the testimony tending to show contributory negligence on the part of Freeman was conclusive, and that nothing remained for the jury, and that the company was entitled to an instruction to return a verdict in its favor.

THIS was an action by the widow and minor children of Thomas A. Freeman, originally brought in the Circuit Court for the District of Washington against the receiver of the Northern Pacific Railroad Company, and subsequently, after the discharge of the receiver, continued against the Northern Pacific Railway Company, purchaser at the foreclosure sale, which, by virtue of the provisions of the decree of sale, had assumed the liabilities of the receiver. The object of the action was to recover damages on account of the death of Thomas A. Freeman, which was alleged to have occurred by reason of the negligence of the company.

The accident occurred at a highway crossing near the eastern corporate limits of the town of Elma, in the county of Chehalis, in the State of Washington, at a point where the highway crosses the railway track nearly at right angles.

Upon the trial, counsel for the railway company asked the court to instruct the jury to return a verdict for the defendant, upon the ground that the undisputed testimony showed that the deceased, as he approached the railway crossing did not look up or down the track, and did not see the train which was approaching in full view, and therefore was guilty of such contributory negligence as to preclude the plaintiffs from recovering damages. This the court refused, but left the case to the jury under the following instruction, to which exception was taken: "Where a party cannot see the approach of a train on account of intervening objects, he may rely upon his ears, and whether he should have stopped and listened under the circumstances is for you to say; and if you believe from the evidence that deceased, Thomas A. Freeman, acted as a man of ordinary care and prudence would have done as he approached the crossing, then your verdict should be for the plaintiffs, in case you find that the defendants were negligent and that the collision was due to their negligence."

Counsel further excepted to the following instruction: "There has been some testimony tending to show that the deceased might have seen the approaching train some feet before he reached the track. If you believe that the deceased could have seen the approaching train when he was within a few

feet of the track, then it is for you to say, under all the circumstances, whether he used reasonable precaution and care to avoid the collision."

Exception was also taken to an instruction to the jury upon the subject of damages, which does not become material here.

Plaintiffs recovered a verdict, upon which judgment was entered for $9000. The judgment was affirmed on writ of error by the Circuit Court of Appeals for the Ninth Circuit, one judge dissenting. 48 U. S. App. 757.

*Mr. C. W. Bunn* for plaintiffs in error.

*Mr. Stanton Warburton* for defendant in error submitted on his brief, on which were also *Mr. J. B. Bridges, Mr. O. V. Linn* and *Mr. Sidney Moor Heath.*

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

There was testimony from several witnesses in the neighborhood tending to show that no whistle was blown by the engineer as the train approached the crossing. There was also the testimony of the conductor, engineer and fireman that the whistle was blown. As the majority of plaintiffs' witnesses were so located that they would probably have heard the whistle if it had been blown, there was a conflict of testimony with respect to defendants' negligence, which was properly left to the jury.

The real question in the case was as to the contributory negligence of plaintiffs' intestate. For several hundred feet on either side of the highway crossing there was a cut of about eight feet below the surface of the surrounding country, through which the railway ran. The highway approached the crossing by a gradual decline, the length of which was from 130 to 150 feet. Along the greater portion of this distance the view of a train approaching, either from the north or the south, was cut off by the banks of the excavation on either side of the highway; but at a distance of about forty

feet before reaching the track the road emerged from the cut, and the view up the track for about 300 feet was unobstructed.

At the time of the accident, Freeman was driving along the highway, going eastward from the town of Elma in a farm wagon drawn by two horses at a slow trot. He was a man thirty years of age, with no defect of eyesight or hearing, and was familiar with the crossing, having frequently driven the same team over it. The horses were gentle and were accustomed to the cars.

The duty of a person approaching a railway crossing, whether driving or on foot, to look and listen before crossing the track, is so elementary and has been affirmed so many times by this court, that a mere reference to the cases of *Railroad Company* v. *Houston*, 95 U. S. 697, and *Schofield* v. *Chicago & St. Paul Railway Co.*, 114 U. S. 615, is a sufficient illustration of the general rule.

There were but three witnesses to the accident. Two of these were women who were walking down the highway, and approaching the crossing on the opposite side, facing the team. At the time the deceased was struck by the train, they were from 200 to 250 feet away. They testified that the horses were coming down at a slow trot, not faster than a brisk walk, and that their speed was uniform up to the time of the accident; that the deceased looked straight before him, without turning his head either way; that the team did not swerve but trotted directly on to the crossing, and that the deceased made no motion to stop until just as the engine struck him. The other witness was a little girl, ten years of age, who was standing on the hill on the opposite side of the track, near the point where the descent of the highway into the cut began, and was consequently from 130 to 150 feet from the railway track. The deceased passed her and two other young children who were with her. She testified that as he passed his head was down, and he was looking at his horses; that "they went down aways, and then they run and flew back;" that they were going at a slow trot; that when Freeman saw the train he tried to pull the horses around, as

if he were trying to get out of the way, when the train struck them.

Another witness was driving behind the team, but he testified to nothing which bore upon the material question whether the deceased took any precaution before crossing the track.

So far, then, as there was any oral testimony upon the subject, it tended to show that the deceased neither stopped, looked nor listened before crossing the track, and there was nothing to contradict it. Assuming, however, that these witnesses, though uncontradicted, might have been mistaken, and that the jury were at liberty to disregard their testimony and to find that he did comply with the law in this particular, we are confronted by a still more serious difficulty in the fact that if he had looked and listened he would certainly have seen the engine in time to stop and avoid a collision. He was a young man. His eyesight and hearing were perfectly good. He was acquainted with the crossing, with the general character of the country, and with the depth of the excavation made by the highway and the railway. The testimony is practically uncontradicted that for a distance of forty feet from the railway track he could have seen the train approaching at a distance of about 300 feet, and as the train was a freight train, going at a speed not exceeding twenty miles an hour, he would have had no difficulty in avoiding it. When it appears that if proper precautions were taken they could not have failed to prove effectual, the court has no right to assume, especially in face of all the oral testimony, that such precautions were taken. The comments of Mr. Justice Field in *Railroad Company* v. *Houston*, 95 U. S. 697, 702, are pertinent in this connection: "Negligence of the company's employés in these particulars" (failure to whistle or ring the bell) "was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty

of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant."

If, in this case, we were to discard the evidence of the three witnesses entirely, there would still remain the facts that the deceased approached a railway crossing well known to him; that the train was in full view; that, if he had used his senses, he could not have failed to see it; and that, notwithstanding this, the accident occurred. Judging from the common experience of men, there can be but one plausible solution of the problem how the collision occurred. He did not look; or if he looked, he did not heed the warning, and took the chance of crossing the track before the train could reach him. In either case he was clearly guilty of contributory negligence.

The cases in this court relied upon by the plaintiffs are all readily distinguishable, either by reason of the proximity of obstructions interfering with the view of approaching trains, confusion caused by trains approaching simultaneously from opposite directions or other peculiar circumstances tending to mislead the injured party as to the existence of danger in crossing the track.

Upon the whole, we are of opinion that the testimony tending to show contributory negligence on the part of the deceased was so conclusive that nothing remained for the jury, and that the defendant was entitled to an instruction to return a verdict in its favor. The disposition we have made of this question renders it unnecessary to express an opinion upon the instruction as to damages.

*The judgment of the court below must therefore be reversed, and the cause remanded to the Circuit Court for the District of Washington, with directions to grant a new trial.*

The CHIEF JUSTICE and MR. JUSTICE HARLAN dissented.