# HARTEN

*v.*

# THE BRIGHTWOOD RAILWAY COMPANY.

CONTRIBUTORY NEGLIGENCE; STREET RAILROADS.

Where a woman, on alighting from a street car, waited for the car to start and then passed in the rear to a parallel track, where she was struck and injured by a car coming in the opposite direction and running about ten miles an hour, and it appears that she was familiar with the place and knew that a car might pass at any moment, that the track was practically straight and unobstructed for several hundred yards, that one looking up the track for the coming car could not have failed to see it, and that it was not possible for the car to traverse the space along which it was visible, between the time she should have looked for it, as she passed from one track to the other, and the moment when she stepped upon the rail and was struck, she was guilty of contributory negligence *per se*, and cannot recover for her injuries, even though she testifies that she did look to see whether a car was approaching along the track where she was struck, and did not see one coming.

No. 1027.   Submitted February 15, 1901.   Decided May 22, 1901.

HEARING on an appeal by the plaintiffs, husband and wife, from a judgment of the Supreme Court of the District of Columbia entered upon the verdict of a jury directed by the court in an action to recover damages for personal injuries to the female plaintiff.   *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an action for damages begun by Hugh Harten and wife, Julia Harten, against the Brightwood Railway Company and the Washington, Woodside and Forest Glen Railway and Power Company.

The appeal is from a judgment upon a verdict returned, by direction of the court, in favor of the defendants.

The case turned upon the testimony given by the plaintiff Julia Harten on her own behalf. She and her husband lived at Brightwood, in the District of Columbia, about four miles from Washington, on the 7th Street road. Their house is situated about fifty or more feet from the double tracks used by the defendants. There was no crossing at this place, but the cars were accustomed to stop along the way opposite the houses for the purpose of taking on and letting off passengers. She had been in the habit of riding on the cars in and out of Washington, and started home from that city about 10 A. M. on July 31, 1898. She took a seat in a car of the Washington, Woodside and Forest Glen Railway and Power Company, and paid her fare. The car stopped opposite her house at her request. She got off and passed around the rear of the car to go to her house. To reach it she was compelled to cross the adjacent track, in doing which she was run down and injured by a car of the Brightwood Company, coming from the opposite direction. She said that she looked up and down the tracks and saw no car coming, but as she went to pass over the fender struck her and knocked her upon it; that the fender struck her as she got her foot on the east rail of the track; that she looked as she was passing from behind the car, from which she had just alighted, and did not see any car, made another step, and the car struck her. She then became unconscious. She heard no bells, signals or warning calls. The space between the two tracks is about four feet wide. On cross-examination she said she could see up and down the tracks at that point some two hundred or three hundred yards. When she got off the Woodside car she took a reasonable time to get across, and waited until the Woodside car started off before she undertook to cross. Asked if there was anything to prevent her seeing three or four hundred yards up the track at that point her reply was: "Well, I looked and I did not see a car coming." Asked if there was anything to prevent her looking up the track whilst waiting, she said: "I

couldn't see up that way with a closed car." She further
said that she looked when she got off the car and again when
she came from behind the car and did not see the coming
car. The car from which she had alighted — the closed car
referred to — moved on before she crossed the track in rear
of it. She walked slowly across the first track and the space
intervening between it and the next track. Whilst in this
space she said she looked again up the track to see if a car
was coming and saw none. Asked why she did not see the
coming car, she replied: "Why the car was coming at such a
quick rate, I guess I couldn't very well get out of the way."
This answer indicating that she referred to looking whilst
on the track of the coming car, she was asked what obstruc-
tion there was to the view when she was between the two
tracks, and replied that there was none. She was then asked
to explain how it happened that when she looked up the road
from that point she did not see a car within three or four
hundred yards. Upon a repetition of the question which she
failed to answer at first, her reply was: "I didn't see the
car." She admitted that her eyesight was good. The wit-
ness was then further cross-examined on behalf of the other
defendant. In this she said, that as soon as the Woodside
car started again she started across the tracks. That she
looked first when on the first track and again when between
the two tracks, to see if a car was coming; that she saw no
car either time, and there was nothing to obstruct the view.
In final explanation of her conduct before stepping on the
second track, she said: "I looked up, and I made a step,
and I looked up just like that, and I didn't see nothing, and
I made another step and the car struck me." It appears
plainly from the evidence of plaintiff and other witnesses
that there was nothing to prevent the sight of the coming
car for a distance of between three hundred and four hun-
dred yards. The sun was shining brightly. Other testi-
mony showed that the car which struck the plaintiff was mov-
ing at the ordinary rate of speed not exceeding ten miles
per hour.

*Mr. Charles Bendheim* and *Mr. Edwin Forrest* for the appellants.

*Mr. J. J. Darlington* and *Mr. D. W. Baker* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

It is virtually conceded by the appellant that there was no error in directing a verdict for the Washington, Woodside and Forest Glen Railway and Power Company.

Its duty ended when the plaintiff was safely deposited at the point designated by her along side the track, and it had no connection with its codefendant that would render it liable for the results of the latter's negligence or misconduct.

Giving the plaintiff the benefit of every inference that can be fairly deduced from her own account of the cause of her injuries we find no error in the instruction given to the jury to find for the defendant which inflicted them. It is unnecessary to consider whether the defendant, operating the car which did the injury, was guilty of negligence that would warrant the submission of that question to the jury, for we are of the opinion that the plaintiff was plainly guilty of contributory negligence. The accident could not have occurred had she exercised any degree of care before crossing the tracks.

She was familiar with the place and knew that a car might be expected upon the other track at any moment. The track was practically straight and wholly unobstructed for several hundred yards. One looking up the track for the coming car could not fail to see it, and it was not possible for the car to traverse the space along which it was clearly visible, between the time the plaintiff looked for it as she passed from one track to the other, and the moment when she stepped upon the rail and was struck by the fender attached to the front of the car. It would serve no useful purpose to review the many authorities cited on the argument in support of the contentions of the opposing parties. The difficulty in

this class of cases lies, not in the ascertainment of the governing principle of law, but in its application to the facts of the particular case.   The facts and circumstances of one case are generally so different from those of another that the decision of the one furnishes no certain rule for the determination of another.   One decision that is most nearly in point is the only one binding upon us.   *Northern Pacific R. Co.* v. *Freeman,* 174 U. S. 379.   In that case, the judgments of both the Circuit Court of Appeals and the Circuit Court were reversed because of the error of the latter in not directing the jury to find for the defendant on the ground of the contributory negligence of the deceased whose representatives sued for damages.   Freeman drove along the highway in a two-horse wagon.   He had frequently driven over the crossing and had no defect of sight or hearing.   His horses were gentle and used to the crossing and to the sight of the railway engines.   He was seen by several witnesses from 200 or 250 feet away, who said that he seemed to look straight ahead.   He approached the crossing at a slow trot. He did not stop until too late and was struck and killed, before he could turn aside, by the engine of a freight train. In delivering the opinion of the majority of the court Mr. Justice Brown said:— " So far, then, as there was any oral testimony upon the subject, it tended to show that the deceased neither stopped, looked nor listened before crossing the track, and there was nothing to contradict it.   Assuming, however, that these witnesses, though uncontradicted, might have been mistaken, and that the jury were at liberty to disregard their testimony and to find that he did comply with the law in this particular, we are confronted by a still more serious difficulty in the fact that if he had looked and listened he would certainly have seen the engine in time to stop and avoid a collision.   He was a young man.   His eyesight and hearing were perfectly good.   He was acquainted with the crossing, with the general character of the country, and with the depth of the excavation made by the highway and the railway.   The testimony is practically uncontradicted that for a distance of forty feet from the railway

track he could have seen the train approaching at a distance of about three hundred feet, and as the train was a freight train, going at a speed not exceeding twenty miles an hour, he would have had no difficulty in avoiding it. When it appears that if proper precautions were taken they could not have failed to prove effectual, the court has no right to assume, especially in the face of all the oral testimony, that such precautions were taken. * * * If, in this case, we were to discard the evidence of the three witnesses entirely, there would still remain the facts that the deceased approached a railway crossing well known to him; that, if he had used his senses, he could not have failed to see it; and that, notwithstanding this, the accident occurred. Judging from the common experience of men, there can be but one plausible solution of the problem of how the collision occurred. He did not look; or if he looked, he did not heed the warning, and took the chance of crossing the track before the train could reach him. In either case he was clearly guilty of contributory negligence."

The foregoing reasoning applies with even greater force to the facts of this case.

The judgment must be affirmed, with costs; and it is so ordered.                          *Affirmed.*