STATE TRUST CO. v. KANSAS CITY, P. & G. R. CO. et al.

FORDYCE et al. v. BRADLEY.

(Circuit Court of Appeals, Fifth Circuit. November 19, 1901.)

No. 1,032.

RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

Plaintiff, an employé of a railroad company, was walking on a track extending over the water on a trestle to a pier where he was working. There were two tracks, which came together before reaching the pier, and about 20 feet beyond the junction there was a switch platform. Plaintiff saw a switch engine backing out from the pier, and knew that at the switch it would take the other track. He reached the junction about the time the engine stopped at the switch, and, in attempting to pass over the single track to reach the platform before the engine started, he fell immediately in front of the engine, and was run over and injured. *Held*, that it was his duty to stay on the other track, which was safe, until the engine passed, and that in attempting to pass over the single track in front of the engine he was guilty of negligence, which precluded his recovery from the railroad company for his injury.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

See 110 Fed. 10.

This is a suit by intervention for damages for personal injuries. The original suit was by the State Trust Company against the Kansas City, Pittsburg & Gulf Railroad Company, Missouri, Kansas & Texas Trust Company, Texarkana & Ft. Smith Railway Company, and Kansas City, Shreveport & Gulf Railway Company. The court appointed R. A. Greer receiver of the Texarkana & Ft. Smith Railway Company. He resigned, and S. W. Fordyce and Webster Withers were appointed in his place. The intervener, Wm. E. Bradley, sued for $20,000 damages, alleging that the defendant corporations, in operating a railroad by their agents, wrongfully ran an engine over him, cutting off part of his foot. One of the defenses interposed was that the injury complained of was caused by the contributory negligence of the intervener. The intervention was referred to a master in chancery, who reported in favor of the intervener, and recommended that a judgment be entered in his favor for $4,000. The receivers filed exceptions to the master's report, alleging that the master erred in failing and refusing to find that the intervener was guilty of contributory negligence, and in recommending that judgment be entered for the intervener. The court overruled the exceptions, and entered judgment for $4,000 for the intervener against the Texarkana & Ft. Smith Railway Company and the receivers, who have appealed to this court. The overruling of the exception raising the question of contributory negligence is assigned as error.

The intervener, as a witness for himself, testified in part as follows: "My name is W. E. Bradley. I was 27 years old on the last day of November, this year. Q. This is a suit against the Texarkana & Fort Smith Railway Company for cutting off your foot. Tell the judge how it was and when. A. I was working for, I suppose, the Texarkana & Fort Smith Railway Company. I was employed by Mr. John C. Collins, the agent of the Texarkana & Fort Smith Railway Company at Port Arthur. I was working at the office on the export pier out over the lake. This accident occurred on the 23d of last March, in the evening, about five or half past five. I was walking along the railroad trestle, which was the means that the employés of the Texarkana & Fort Smith Company had in going to and from the export pier over the lake, and the only means. The railroad company had originally put a plank walk along all the way from the shore to the export pier alongside this trestle, but

111 F.—49

there was only about one-third of it there at the time I was hurt, the balance of it having been washed away by the waves. At the place where I was walking there was no plank walk, and never had been any that I knew anything about. I saw the switch engine coming. It was backing out on the track to get some empty cars. I knew that they would have to stop at the switch stand, and go on the other track from the one which I was on, in order to get the cars. I was coming down one switch track, and the empty cars were on the other. I was attempting to reach the switch platform before the engine passed it. I was not more than twenty feet from switch platform when the engine stopped, and the switchman jumped off and threw the switch, and signaled for the engineer to come back, and at that time I was not more than twenty feet from the engine. The switch platform was built some eight or ten feet square. When the engine reached the switch the switchman jumped off, and threw the switch, and as soon as he had done so he stepped on the engine footboard at the rear of the tender, and signaled the engineer to come back, and it seemed to me that the engineer had thrown the throttle wide open, and he came back fast, although I could not say how fast, but probably three or four miles an hour, and ran into me. The engine had stopped at the switch platform perfectly still, and then the switchman turned the switch, and signaled the engineer, and he started back on me. The switchman saw me at the time and told me to hurry up, but I do not know what he meant by telling me that. He told me that when he signaled the engineer to start back. In the meantime I was walking fast to reach the platform before they started, when I missed a step, and fell down. All the train men, I thought, were looking at me. I made every effort to keep from getting hurt." And on cross-examination he stated: "My intention was to get to that platform in order to pass. I do not know why I did not stop at the double track, and let the engine pass. I suppose it is like a great many things a person sees after it is too late. Q. State to the court positively if you had stopped on the north track and stayed there until the engine went past would you have gotten hurt. A. No, sir; I would not have gotten hurt. The engine was moving all the time, before it stopped at the switch platform. It was about twenty feet from me when it stopped. I was walking towards the engine all the time. If the switchman had not thrown the switch, it would have gone on down the track I was first on." And on redirect examination he stated: "The trestle was constructed over the water, and the water was probably two or three feet deep." And, being recalled, further said: "Q. Where were you coming from? A. The warehouse on the export pier. There is only one track between the switch platform and the shore, and the engine was coming out on that. The switch was set so that the engine would come out on the export track, and the switchman turned it so that it would go on the other track. If the engine had not stopped, but had come straight on, it would not have come on the track I was on. If I had not left the export track, I would not have been on the track the engine was going on, after the switchman turned the switch. As it was, when the switch was turned I was on the same track the engine had to go on, as I was then on the single track between where the two tracks come together and the switch platform, and about twenty feet from the switch platform when the engine stopped. I was going from the export pier towards the engine, and at the time the switch was so set that the engine would have come on the track that I was on, but, when the switchman stopped and threw the switch, that let the engine go on the other track from the one I came down from the export pier on. I knew that the engine was going out on the other track from the one I was on, when I saw it coming from the shore, as I knew it was going after the empty rock cars. When the switch was thrown, I was on the single track between where the two tracks come together and the switch platform. I knew that the engine had already gone out on the export pier, and that it was now going out on the rock pier to get the empties there. * * * I do not remember exactly where I was when I first saw the engine. When the engine stopped, I was not more than 20 feet from the switch platform; that is, about the length of the tender."

The intervener made the following sketch of the place of the accident:

O'Pyre, the switchman, Bridgman, the engineer, and Newton, the foreman, who were present when the accident occurred, testified that there was a plank walk along the side of the pier opposite the point where the accident occurred, and that there was nothing to prevent Bradley, the intervener, from going on the walk, where he would have been safe from the engine as it passed. There was no evidence tending to show that the men in charge of the engine wantonly or intentionally injured the intervener. It was expected by those in charge of the engine that the intervener, who was seen approaching on the track, would step off the track on the walk as the engine approached him. People were in the habit of walking on the track at the place of the accident, but would step off on the walk as the engine approached.

Hal W. Greer, R. A. Greer, and Lathrop, Morrow, Fox & Moore, for appellants.

J. F. Lanier, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The intervener admits that if he had stopped on the north track, and stayed there till the engine passed, he would not have been injured. He knew the movements of the engine that were to be made, and was familiar with the tracks. He attempted, he says, to reach the switch platform, so that the engine might pass him there. He should have remained in a place of safety. In walking thoughtlessly along the track, over which he knew the engine was coming, he was guilty of culpable negligence. He took the chances of getting to the switch platform before he would meet the engine. To quote Mr. Justice Field in Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542: "No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure." Accepting, therefore, the theory of the intervener, that there was not a walk parallel with and near the railroad track where the accident occurred, it was culpable negligence in him to walk on the

track, meeting the approaching engine, and in plain view of it. Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014.

If, on the other hand, it be true, as testified to by several witnesses, that there was a plank walk near to, and parallel with, the roadbed, opposite the place where the accident occurred, the intervener should have walked on it, and not on the roadway. Assuming these witnesses to speak the truth,—and they are not positively contradicted by the intervener in his testimony,—it is difficult to understand why the intervener did not walk on the plank way, or why he did not step out on it, so as to leave the road free for the engine to pass. The circumstances strongly indicate that he attempted to get on the moving engine.

The evidence tends to show that he fell so near the engine (if not under it) that it would not have been possible for the engineer, after his fall, to have prevented the injury.

No fair construction, we think, can be given the evidence that would free the intervener from negligence which contributed to his injuries.

The judgment must be reversed, and the cause remanded, with instructions to enter a judgment dismissing the intervening petition. Reversed.