### DELAWARE, L. & W. R. CO. v. DEVORE.

(Circuit Court of Appeals, Second Circuit. April 16, 1903.)

#### No. 128.

1. RAILROADS—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE—EVIDENCE —QUESTION FOR JURY.

Plaintiff, an infant, was driving with his parents, and approached a railroad crossing, at which he was injured, after dark. Plaintiff's parents were unfamiliar with the crossing, and as they approached had a consultation about being near the same. The father pulled the horse down to a walk, and both father and mother looked and listened for a train, but saw nothing until the horse was on the track, when they were suddenly struck by defendant's fast passenger train, which approached without ringing the bell, or blowing the whistle, or giving other indication thereof. The approach to the crossing wound down a hill, and the view of the track was obstructed by bushes, trees, and buildings. Before reaching the crossing, the track ran through a deep cut, and the evidence as to how far the headlight could be seen from the crossing was conflicting, but would have justified a finding that from 74 to 50 feet from the inside rail the track could be seen for a distance of from 300 to 443 feet, and that, with the exception of a space of 15 feet between points 50 and 65 feet distant from the track, the end of the cut could not be seen until a point 37 feet from the rail was reached. *Held,* that whether plaintiff's parents were guilty of contributory negligence was for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS—INSTRUCTIONS.

Where, in an action for injuries to plaintiff at a railroad crossing at night, the court charged that it was the duty of every person traveling on the highway to use reasonable care, and not to approach a railroad crossing recklessly or heedlessly, but that he must use his faculties, keep his eyes and ears open, look in both directions, and take such care as a reasonably intelligent person is required to take under such circumstances, and the evidence showed that, though plaintiff's parents had exercised due care in approaching the crossing, they might have failed to see the lights from the train, and would, therefore, have been

justified in crossing, it was not error for the court to refuse to charge that, because the lights of the train were visible prior to the accident, the fact that they were not seen demonstrated or raised a presumption of contributory negligence.

**3. SAME—CARE REQUIRED.**

An instruction, in an action for injuries at a railroad crossing, that the law requires such care and prudence by the railroad company as is necessary to protect the lives and limbs of those who were lawfully on the premises of the railroad, and that it is the duty of every person traveling on a highway to exercise reasonable care and caution, and not approach a railroad crossing recklessly or heedlessly, but that he must use his faculties, keep his eyes and ears open, look in both directions, and take such care as a reasonably intelligent person is required to take in such circumstances, was not objectionable as imposing a greater degree of care on the railroad company than on travelers on the highway.

**4. SAME—WITNESSES—HARMLESS ERROR.**

Where plaintiff's witnesses in an action for injuries at a railroad crossing did not have equal opportunities with defendant's witnesses for knowing whether the locomotive's bell was rung and the whistle blown, error, if any, in an instruction on such subject, in requiring that the witnesses testifying thereon should have equally good opportunities for observation, was not prejudicial to defendant.

**5. SAME—OBJECTIONS TO EVIDENCE.**

An objection that a question asked a witness on cross-examination was incompetent and immaterial was insufficient to justify its exclusion on the ground that it was not relevant to any evidence given on the witness' direct examination.

In Error to the Circuit Court of the United States for the Southern District of New York.

Hamilton Odell, for plaintiff in error.

Walter K. Barton and W. D. Tyndall, for defendant in error.

Before WALLACE and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. Writ of error by defendant from a judgment of the United States Circuit Court for the Southern District of New York, entered upon a verdict of a jury in favor of the plaintiff for damages for injuries sustained while attempting to cross the tracks of defendant's railroad. The assignments of error challenge the correctness of the action of the trial court in refusing to direct a verdict for defendant on the ground of plaintiff's contributory negligence, and in submitting to the jury the question of the contributory negligence of plaintiff's parents.

At the time of the accident, November 22, 1892, plaintiff was about 14 months old, and lived with his parents at Wallpack, N. J. On the morning of said day his parents drove with him in a top buggy, with a gentle horse, from their home to Belvidere, crossing the defendant's railroad in a southwesterly direction at a point known as "Hope Crossing," the place of the accident. The crossing is at right angles to the railroad tracks, which, in this vicinity, run northwest and southeast. They started to return home by the same road at about 6 o'clock in the evening; the husband seated on the right side of the buggy, and driving; the wife holding the plaintiff in her arms. The night was very dark, cloudy, and stormy. It was hailing or sleeting and snowing occasionally. The wind was blowing hard, striking the buggy at the

back. The top of the buggy was partly lowered. Plaintiff's parents were not familiar with said crossing. It is doubtful whether either of them had ever been over said road until that morning. Plaintiff's mother testified that as they approached the railroad they had a consultation about being near the crossing they had come over in the morning, and, in consequence thereof, plaintiff's father pulled the horse from a trot down to a walk; that she looked on either side to see whether she could see a train approaching; that they were each looking each way, and listening; that they went slowly on; that she saw nothing until she saw the glittering of something at the horse's feet just as they were struck by a railroad train; and that she heard no bell rung or whistle blown, nor any indication of the train at any time. The accident occurred at about 23 minutes past 7. The front part of the buggy was struck by the engine of one of defendant's passenger trains coming from the southeast on the further or northwest-bound track. The train was running at the rate of 40 to 50 miles an hour. Plaintiff's father died as the result of the collision. The sole testimony as to the fact of the accident and what preceded it is that of plaintiff's mother.

Counsel for defendant contends that upon the facts proved it affirmatively appears that the accident was caused by the contributory negligence of plaintiff's parents, and that, if they had looked, as she testified they did, they must have seen the lights of the approaching train in time to avoid the collision. Counsel, therefore, invokes the application of the rule as stated by the Supreme Court of the United States in Northern Pacific Railroad Company v. Freeman, 174 U. S. 379, 17 Sup. Ct. 763, 43 L. Ed. 1014, that:

"When it appears that, if proper precautions were taken, they could not have failed to prove effectual, the court has no right to assume, especially in face of all the oral testimony, that such precautions were taken."

This crossing was a particularly dangerous one. The approach winds down a hill, and the view to the southeast is obstructed by bushes and a hedge, a house, outbuildings, and trees. The track in that direction runs through and is obstructed from view by a long cut, which at 1,200 feet from the crossing is 15 feet deep, and ends at a point 735 feet from the crossing. There is a conflict of testimony as to the distance at which the light of an approaching train could have been seen on the night in question, but there was evidence from which the jury were justified in finding that at distances varying between 74 feet and 50 feet from the inside rail of the northwest-bound track the track could be seen for a distance of only 300 feet to 443 feet; that, with the exception of a space of 15 feet between points 50 and 65 feet distant from said track, the end of said cut could not be seen until a point 37 feet from said rail was reached. In these circumstances the jury were justified in believing that only a very few seconds could have elapsed between the moment of the collision and the moment when the light from the approaching train could have been seen by a person who was constantly looking in the direction in which it was approaching. The witness did not know that a train was due, or in which direction it might be expected. The wind at her back interfered with her hearing its approach. At the time when she was looking

toward the southeast, her view might have been obstructed by snow, or by her husband sitting on her right, or she might reasonably have been looking in the opposite direction during the brief interval in which the light was visible. In these circumstances the judge would not have been justified in taking the case from the jury, and assuming, as is contended by counsel for defendant, that it was "physically impossible" that plaintiff's parents could have looked without seeing the train. The case was peculiarly one in which the jury, in view of all the circumstances, should be permitted to determine whether the preponderance of evidence showed contributory negligence on the part of plaintiff.

Various exceptions were taken to the charge of the court. Thus it is assigned as error that the court refused to charge that:

"If either Mr. Devore or Mrs. Devore could have seen the train if they had looked, the presumption is that they did not look, and so were negligent."

"If Mr. Devore could have seen the lights of the train in season for safety, the accident itself demonstrates that he did not look, or that, if he did, he ventured upon a hazardous effort to cross in spite of the danger."

"If Mrs. Devore could have seen the lights of the train in season for safety, the accident itself demonstrates that she did not look, or that, if she did, she ventured upon a hazardous effort to cross in spite of the danger."

The court had already charged the jury as follows:

"It is the duty of every person traveling upon a highway to exercise reasonable care and caution, and not approach a railroad crossing recklessly or heedlessly. Such a person must use the faculties which the Almighty has given him; must keep his eyes and ears open; must look in both directions; and must take such care as a reasonably intelligent person is required to take in such circumstances."

We think, in view of the conditions already discussed, that the court was not bound to add the foregoing statements to the instructions already given. These requests assume that, because the lights were visible prior to the accident, the fact that they were not seen demonstrated or raised a presumption that the witnesses did not exercise due care. The evidence, on the contrary, showed that, although the witnesses had exercised due care, they might have failed to see the lights, and would, therefore, have been justified in proceeding as they did. The legal rule raised by the request was fully and accurately stated in the charge of the court, and especially in the portion quoted above.

The seventh assignment of error is as follows:

"Seventh. The darkness and storm required greater watchfulness on the part of both Mr. and Mrs. Devore than if the crossing had been made in the daytime or on a clear night."

Upon this point the court charged as follows:

"In the case of a railroad company engaged, as it is necessarily, in a hazardous occupation, the law requires such care and prudence as is commensurate with the danger and with the risks to be assumed. Such care and prudence must be taken by the company as are necessary to protect the lives and limbs of those, whether servants, employés, or the public generally, who are lawfully upon the premises of the railroad. * * * It is the duty of every person traveling upon a highway to exercise reasonable care and caution, and not approach a railroad crossing recklessly or heedlessly. Such a person must use the faculties which the Almighty has given him; must keep his eyes and ears open; must look in both directions; and must take such

care as a reasonably intelligent person is required to take in such circumstances."

The argument upon this point is not so much directed to the failure of the court to sufficiently state the obligation as to watchfulness resting upon plaintiff's parents as to the foregoing statements in the charge, which it is claimed impose a greater degree of care upon a railroad company than upon travelers where the railway and highway intersect; while the rule is that their obligations, rights, and duties are equal and reciprocal. It is sufficient to say upon this point that the statements in the charge as to which this objection is now raised were not excepted to. The language of the charge as to the obligation of watchfulness in the case of persons approaching a crossing, taken in connection with the full review of the circumstances of the case, sufficiently informed the jury as to the character and degree of care required on such an occasion.

It is unnecessary to discuss the exceptions to the charge in regard to the ringing of the bell and blowing of the whistle. The court fully and accurately stated and illustrated the rule and its exceptions. The limitations introduced therein that the witnesses should have had equally good opportunities for observation, even if erroneous, could not have injured the defendant, for the evidence showed that the witnesses for plaintiff did not have equal opportunities with the witnesses for defendant; and therefore the testimony of the latter, under the rule as stated, would be entitled to greater weight.

On the previous appeal in this case this court said:

"The request asserts the proposition that positive testimony of witnesses is entitled to more weight than the negative testimony of other witnesses, and makes no discrimination in regard to the credibility in other respects of the two classes of witnesses. The positive class may impress the triors with lack of confidence in their trustworthiness, their disinterestedness, their accuracy; but the request establishes as a rule of law that positive testimony is entitled to superior credit whether other things are equal or not, and is, we think, a broader rule than a court should be called upon to give to a jury, without reference to the credibility of the witness in other respects." D. L. & W. R. R. Co. v. Devore, 52 C. C. A. 77, 114 Fed. 155, 156.

The following question was asked of a witness on cross-examination:

"Q. I will read another question: 'I regard Hope Crossing as a dangerous crossing. Any one going north, when he gets to the hill, Emery's house obstructs the view until you get near the track,' and you say 'within 33 feet of it before you can see through the cut.' Did you say that?"

It was objected to on the ground that it was "incompetent and immaterial." It was not relevant to any testimony given by the witness on his direct testimony, and, if objected to on that ground, should have been excluded. The exception was not properly taken.

It is unnecessary to discuss the other assignments of error. We are satisfied that there was nothing in the charge or refusals to charge which would justify a new trial. The charge fully and fairly submitted to the jury the questions of fact, together with the rules of law applicable thereto.

The judgment is affirmed, with costs.