INTERNATIONAL MERCANTILE MARINE CO. v. GAFFNEY et ux.

(Circuit Court of Appeals, Third Circuit.  January 26, 1906.  On Rehearing, April 19, 1906.)

No. 31.

SHIPPING—INJURY OF THIRD PERSONS—LIABILITY OF VESSEL FOR NEGLIGENCE OF TOWING TUG.

The owners of a steamship which was wholly in charge of tugs hired to take her from her mooring at a public pier and start her on her voyage cannot be held liable for the injury of a person on the pier, not a passenger, resulting from such handling of one of the tugs by those in charge of it, who had no connection with the ship, as to cause a hawser to sweep across the pier.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Charles Biddle, for plaintiff in error.

J. H. Brinton, for defendants in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge.  The errors assigned in this case all go to the charge of the court, or to its refusal to charge in accordance with several points which were submitted on behalf of the defendant below, who is the plaintiff here.  The questions raised may be comprehensively stated to be, (1) whether the defendant was entitled to the direction of a verdict in its favor, and (2) whether, if it was not, the instructions that were given to the jury were correct.  But as we are of opinion that the first of these questions must be affirmatively answered, the second need not be separately considered.

The action was brought by John Gaffney and Theresa Gaffney, his wife, to recover damages for personal injuries sustained by the latter, which the plaintiffs alleged had been caused by negligence of the defendant.  There was no substantial dispute about the material facts.  The steamship Friesland belonged to the defendant.  On July 16, 1904, she was moored at a public pier on the Delaware river, and was in readiness to proceed upon a voyage down the river and out to sea.  A section of the pier was roped off, and Theresa Gaffney, whose niece was among the passengers, was standing there, with others, to see the vessel start.  The steamtugs Churchman and Bryn Mawr were taking the vessel out into the river, and turning her bow, which had been moored toward the shore, in the direction in which she was to go.  The Bryn Mawr, having been made fast to the Friesland's stern by a hawser of considerable length, went to a point in the river above the end of the pier, where she remained, until, upon being signaled to proceed, she did so, with the result that the hawser that has been mentioned slipped over the end of the pier and struck the plaintiff, Theresa Gaffney.  Neither of the tugs belonged to the defendant.  They were owned by Peter Wright & Sons, and that firm was performing the service in which they were then engaged under a contract between it and the defendant.  When the ship was connected with the tugs, it was placed in their exclusive

143 F.—20

control. Their representative was on the Friesland's bridge when he gave the order for the Bryn Mawr to proceed. From that place he could not signal directly to her, but he communicated the signal to an agent of the defendant, who was upon the pier, and by him it was conveyed, as it was intended it should be, to the tug. The latter gave no order himself, nor did he have, or assume to have, any authority to do so on behalf of the defendant. He merely transmitted an order which was given by the person to whom the contractors had confided the management of the work.

The learned trial judge did not overlook, but expressly recognized, the well-known rule that one who has contracted with a competent independent contractor to perform a lawful service for him, cannot be held liable for negligence committed by such contractor or his servants in prosecuting the work he had agreed to do. Nor does it appear that the court below was at all influenced by the wholly inadmissible suggestion which has been urged upon the attention of this court, that the transmission of the signal that has been referred to amounted to an assumption of control by an agent of the defendant. Yet the case was submitted to the jury upon the ground that the defendant owed to Theresa Gaffney a duty to see to it that she should suffer no injury, and that this duty was so absolute in its nature that responsibility for failing to discharge it could not be shifted to an independent contractor. "So that" (to quote from the charge) "it makes no difference that this was another company hired to pull the Friesland into the stream, for they [the defendants] were responsible for whatever occurred in doing that, and, if Peter Wright & Sons * * * did that in a negligent way, it was their [the defendants'] act for which they are responsible." We cannot concur in this view of the law. Theresa Gaffney was not a passenger on the vessel of the defendant, and therefore no obligation arising out of that relation is for consideration. The pier, though used by the defendant, was a public one, and the plaintiff was rightfully upon it. But her hurt was not occasioned by any defect in it, or by any act or omission of the defendant or its agents. It was caused solely by the servants of the independent contractors, and whether their conduct was or was not duly careful is a question which need not, and should not, be now discussed.

We are of opinion that the facts we have stated were fatal to the plaintiff's supposed cause of action, and that they were so conclusively shown that nothing remained for the jury. The defendant, therefore, was entitled to an instruction to return a verdict in its favor; and because such instruction was refused, the judgment of the Circuit Court is reversed.

### On Petition to Rehear.

PER CURIAM. The evidence was thoroughly examined before this case was decided. It is supposed, however, that we failed to observe that there was (as is asserted in the petition for a rehearing) a "substantial dispute (1) as to whether or not the owners of the tug boats were shown to have been independent contractors, and (2) as to whether or not the defendant company exercised control of the un-

docking of the vessel." These matters were fully considered; and we thought, as we still think, that the fact that the Friesland was being moved from the dock by an independent contractor, without any exercise of control by the defendant, "was so conclusively shown that nothing remained for the jury." Schofield v. Chicago, M. & St. Paul Railway Co., 114 U. S. 618, 5 Sup. Ct. 1125, 29 L. Ed. 224; Northern Pacific Railroad Co. v. Freeman, 174 U. S. 384, 19 Sup. Ct. 763, 43 L. Ed. 1014.

The evidence to which the petition refers does not admit of the construction which it is claimed the jury should have been permitted to put upon it. The testimony of Stephen A. Shell, when fully and fairly read, is plainly to the effect that the captains of the tugs were the servants of the contractor, and that they were exclusively in control at the time of the accident. The "terms" of the contract—"its duration, its consideration, and scope"—were not material. It was conclusively shown that the firm which was doing the work was acting under an agreement with the defendant, which left to the latter no power of control; and this is all it was necessary to show.

The suggestion that the defendant actually exercised control over the undocking of the vessel is again made; but our opinion upon that subject remains unchanged. An agent of the defendant did inform a representative of the contractor that the vessel was ready to be moved, and he did, as stated in the opinion heretofore filed, transmit an order of such representative to the tug in the river; but there was no evidence whatever that he in any way interfered with or directed the operation.

The prayer of the petition for a rehearing is denied.