CHICAGO, M. & ST. P. RY. CO. v. DONALDSON.

(Circuit Court of Appeals, Eighth Circuit.   November 20, 1907.)

No. 2,476.

1. RAILROADS—INJURY TO PERSON AT CROSSING—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

Plaintiff's intestate was struck by a train and killed while driving in the evening over a railroad crossing on a well-traveled village street. He was in full possession of his faculties, had resided in the vicinity of the crossing for many years, and was thoroughly familiar with it. The

track was straight for a mile or more, the train, which was on its regular time, was lighted, and the headlight burning and from any point within 50 feet of the track could be seen for a long distance. *Held*, that conceding the alleged negligence of the railroad company, in that the train was running at excessive speed and failed to give the statutory signals, in the absence of exceptional conditions, the deceased was chargeable with contributory negligence in failing to see or heed the approach of the train, which precluded a recovery for his death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1144–1149.]

2. SAME—DEFECTIVE CROSSING.

Evidence considered, and *held* not to sustain a verdict finding that the death of a person killed by a railroad train while driving over a highway crossing was due to his being delayed or held on the crossing by reason of a defect therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1140.]

In Error to the Circuit Court of the United States for the District of Minnesota.

Writ of error by the railway company to review a judgment obtained by Donaldson's administrator.

F. W. Root, for plaintiff in error.

David W. Parsons (Parsons & Bowler and A. B. Childress, on the brief), for defendant in error.

Before SANBORN· and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. Plaintiff's intestate was killed in a collision at a railroad crossing over West Mill street, in the village of Dundas, Minn., about half past 5 of the evening of December 4, 1904. He was 49 years of age, and his faculties of sight and hearing were unimpaired. The street, which is a well-traveled thoroughfare, runs east and west, and the railroad northeast and southwest through the village. The deceased had lived in Dundas about 36 years, and for many years in the immediate vicinity of the accident. He was thoroughly familiar with the crossing. On the occasion in question he was driving a span of horses hitched to a wagon on which was a hay rack with a load of wood. When last seen alive he was on the wagon. His course was westward on the street towards the crossing. The train came from the northeast. It was a regular passenger train, was on time, and had been running on the same schedule for several years. The engine struck between the horses and the wagon, throwing the former on the west side and the latter on the east side of the track, thus indicating their probable position at the time of collision. The plaintiff charged that the company was negligent (1) in the failure of the engineer to give the statutory signals of the approach of the train; (2) in running through the village at an excessive speed; and (3) in having a defective crossing. The defense was a denial of negligence and an assertion of contributory negligence on the part of the deceased. At the conclusion of the evidence the company presented a request for a directed verdict, which was denied by the trial court.

We will assume, without further consideration, that plaintiff's evidence, though noticeably slight, was sufficient to justify the jury in

finding there was negligence both in respect of signals and rate of speed and proceed to consider the defense of contributory negligence and in connection therewith the condition of the crossing. From the West Mill street crossing the railroad track ran northeastward in a straight line for nearly a mile. The track was near the center of a broad right of way in which there were no obstructions preventing one from seeing an approaching train for a long distance. The testimony of the village blacksmith, plaintiff's first witness, may be accepted as fairly showing the distance the deceased could have seen up the track as he drove towards the crossing. The witness said, and he was not contradicted, that the corner of the picket fence at the northeast corner of West Mill street and the railroad right of way (on the right of the deceased as he approached the crossing) was 58 feet from the center of the track. He, the witness, stood a foot or two inside of the fence corner. He sent a man up the track, and the point where he disappeared from his view was 792 feet from the crossing. He also testified that with every step he took towards the crossing he could see further along the track. As the train approached the crossing on the evening in question, the headlight of the engine was burning, sparks were being thrown from the smokestack, and the coaches were lighted. It was conclusively shown that there were no fixed obstacles preventing deceased whilst at any place within 50 feet or so of the track from seeing the lights of the train for a long distance. In the absence of exceptional conditions, the case would therefore fall within the rule of Northern Pacific v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; Tomlinson v. Railway, 67 C. C. A. 218, 134 Fed. 233; Wabash R. Co. v. De Tar, 73 C. C. A. 166, 141 Fed. 932, 4 L. R. A. (N. S.) 352. An attempt was made to show that deceased might have been prevented from seeing by snow which was being blown about at the time. There was a little snow on the ground which was being occasionally raised by a northwest wind. The course of the wind was across the track, and, if deceased had looked in the direction of the train, it would not have been in his face. A number of witnesses introduced by both parties testified to having seen the lights of the train at various distances, ranging from 400 to 1,400 feet from their points of observation. No witness who looked testified that snow prevented him from seeing excepting one, and he said that after he had turned a corner he saw the headlight about 400 feet away. One of the plaintiff's witnesses who was looking in the teeth of the wind saw the lights of the train when it was about 1,400 feet away. The evidence upon this subject was so conclusive that there was no dispute for the decision of the jury.

As to the condition of the crossing: A statute of Minnesota imposed upon railroad companies the duty to build and maintain good and sufficient crossings at all points where their railroads are intersected by public highways. It provided that the planks next to the rails should not be more than 2½ inches from the inside surface of the rails; also, that the railroad companies should be liable for any damages resulting from failure to comply with the law. Gen. St. Minn. 1894, §§ 2683, 2685, 2686. It was shown at the trial that the sides of the planks of the crossing were in places as much as three inches from the inner

sides of the rails. It is contended that such condition was a proximate cause of the accident, also that it explains why the ability of a traveler on the highway to see that a train was approaching did not serve to prevent the accident to deceased. To be more definite, it is contended that the condition of the crossing and evidence of other circumstances were sufficient to justify the jury in finding that the foot of one of the horses driven by deceased was caught in a space between a plank and a rail, and so delayed his movement that the collision occurred. A bent horseshoe was presented to the jury. One of the plaintiff's witnesses testified that on the morning after the accident he saw it lying beside the track but did not pick it up. There was testimony that a shoe was missing from the right hind foot of the off horse, and that the nail holes in its hoof were enlarged as though a shoe had been torn therefrom. There was no other proof that there had been a shoe on the hoof just before the collision and no other proof that the particular shoe came from a horse driven by deceased. A witness testified that a week or 10 days after the accident he noticed that a sliver was missing from one of the planks next to the rail on the west side of the crossing, and that it had the appearance of having been recently torn away, and that at that point the side of the plank was three inches from the rail. This was all of plaintiff's proof upon that subject. There was no other evidence showing when the sliver was torn from the plank, or how it was torn, or if by a horse, then whose horse, and under what circumstances. As against this, the president of the village council testified that he and a number of others were at the crossing on the morning after the accident, and when some one queried whether one of the horses could have been caught in the space between the planks and rails he made a close and thorough investigation, and that no such sliver as that mentioned had then been torn away. A section hand of the company, also present, made a similar investigation, and took measurements of the plank, and he testified that no sliver was missing. The engineer of the train testified that, though his position was on the right or west side of the engine, he noticed a few seconds before the collision the horses moving upon the track, and that they were in motion when the engine struck them. We are of the opinion that the finding that the movement of deceased was delayed or prevented by a defective or insufficient crossing was the result of surmise or speculation, and that it lacks that support of substantive proof and fair and reasonable inferences therefrom which alone justifies a verdict imposing a responsibility for damages. The jury inferred that the horse was fully shod when it went upon the crossing, and that the shoe produced came from the horse. Possibly these inferences were permissible in view of the evidence, but it was a mere guess that the horse's hoof was caught in a space between a plank and a rail; that it was so caught before the collision and therefore contributed to the collision; that the loss of the shoe was not the result of the collision itself without regard to a space between a plank and a rail; that the missing sliver had some connection with the accident; that it was torn from a plank in the crossing immediately before or at the time of the collision and not afterwards; and, therefore, that the deceased, having an unobstructed view of the track for a long distance, attempted to cross

when he had sufficient time to do so but was delayed by a defective crossing until the train came up. We think the verdict rests too largely on conjecture. Patton v. Railway, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.

The judgment is reversed and the cause remanded for a new trial.