CHICAGO, ST. P., M. & O. R. CO. v. ROSSOW.

(Circuit Court of Appeals, Eighth Circuit. July 7, 1902.)

No. 1,661.

1. RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.

A farmer, after unloading a load of grain at an elevator, drove directly to and upon a railroad crossing 330 feet distant, with which he was well acquainted, where he was struck by a passing train and killed. He wore a fur coat, with the collar turned up over his ears and extending forward beyond his face. The ground was frozen, and he drove the entire distance at a trot, without stopping or looking in the direction from which the train was approaching. If he had looked, he could have seen it, and if he had listened he could have heard it, in time to have stopped before reaching the crossing. *Held*, such facts appearing by undisputed testimony, that he was guilty of contributory negligence as a matter of law, which precluded a recovery for his death, though the railroad company may have also been negligent.

In Error to the Circuit Court of the United States for the District of Minnesota.

Pierce Butler (Thomas Wilson, on brief), for plaintiff in error.

F. D. Larrabee, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. Rossow, as administrator, brought this action in the court below to recover damages from the railroad company for causing the death of William Rossow, at Wilder, state of Minnesota, on December 14, 1899. The acts of negligence are stated in the complaint filed herein as follows:

"That at said village of Wilder, during all the time herein alleged, there was, and still is, a public highway crossing the defendant's line of railway in said village, and upon the 14th day of December, 1899, said William Rossow was riding in a wagon drawn by a team of horses driven by himself along and upon said highway, and over and across defendant's said line of railway where said highway and said railway intersected in said village, and while said William Rossow was in said wagon upon said highway and upon said defendant's railway track said defendant, through its agents and servants, carelessly, wrongfully, negligently, and unlawfully ran and propelled one of its trains of cars at a high and dangerous rate of speed, and without the ringing of bell, or blowing of whistle, or the giving of signal in any manner of the running of said train, to, against, and upon said team and wagon and said William Rossow; and thereby personal injuries were inflicted upon said William Rossow, from the effects whereof he immediately died."

The answer of the railroad company denied the acts of negligence alleged, and also alleged that the death of Rossow was caused by his own negligence or want of ordinary care. At the close of all

the evidence counsel for the railroad company moved the court to direct the jury to return a verdict in favor of the railroad company, for the reasons: (1) That the evidence failed to show any negligence on the part of the railroad company; (2) that the evidence conclusively established that the negligence of William Rossow caused his death, or directly contributed thereto. This motion was overruled, and exception taken. The railroad company assigns this ruling of the court as error.

Section 6637, 2 Gen. St. Minn. 1894, reads as follows:

"The person acting as engineer drawing a locomotive on any railway in this state, who fails to ring the bell, or sound the whistle upon said locomotive, or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses a traveled road or street, of the same level, except in cities, or to continue the ringing such bell or sounding such whistle at intervals, until such locomotive and the train to which such locomotive is attached, shall have completely crossed such road or street, is guilty of a misdemeanor."

The trial court instructed the jury that at the time of the collision which resulted in the death of William Rossow the railway company had complied with the statute above quoted, so far as the sounding of the whistle was concerned, but submitted the issue as to whether or not the bell had been rung in accordance with the requirements of said statute. Upon this issue the jury found in favor of the defendant in error, and returned a general verdict in accordance with said finding. The trial court also instructed the jury that there was no evidence to warrant them in finding that the railway company was running its train at a high or dangerous rate of speed. The following special question was, among others, submitted to the jury, and answered in the affirmative: "Was the whistle sounded when reasonably near, but more distant than a point eighty rods distant from the crossing?" The trial court, upon the issue of contributory negligence, charged the jury as follows:

"The theory of the defendant is that the deceased was guilty of negligence in approaching that crossing which caused or contributed to the collision; that when he drove out of the west end of the elevator, and around to the crossing, he drove his team upon a trot, with his wagon rattling over the frozen ground, without attempting to observe, by the use of his sight or hearing, whether a train was approaching or not; that he had pulled his fur collar over his ears in such a way that his hearing would be diminished, and did not turn his head to observe what might come within the range of his vision. You have heard his acts and conduct described by the two witnesses who stood in the elevator door, and by other witnesses called by defendant, who stood near the blacksmith shop and elsewhere. If from this evidence you are satisfied that the deceased did in fact drive upon the crossing in such manner, on a trot, without using his senses to inform himself as to whether or not a train was approaching, then I charge upon that he was guilty of contributory negligence, which will bar any recovery in this case."

As Rossow did just what is stated in the above excerpt from the charge, the court ought to have directed a verdict for the railway company upon that issue, as there was no dispute as to what Rossow did immediately prior to his death. The principles of law governing

this case are stated in the unanimous opinion of this court in Pyle v. Clark, 25 C. C. A. 190, 79 Fed. 746, as follows:·

"One whose negligence is one of the proximate causes of his injury cannot recover damages of another, even though the negligence of the latter also contributed to it. The question in such a case is not whose negligence was the more proximate cause of the injury, but it is. did the negligence of the complainant directly contribute to it? If it did, that negligence is fatal to his recovery, and the negligence of the defendant does not excuse it. Railway Co. v. Hoedling's Adm'r, 10 U. S. App. 422, 426, 3 C. C. A. 429, 431, 53 Fed. 61, 63; Railway Co. v. Moseley, 12 U. S. App. 601, 604, 608, 6 C. C. A. 641, 643, 646, 57 Fed. 921, 923, 925; Reynolds v. Railway Co., 32 U. S. App. 577, 16 C. C. A. 435, 69 Fed. 808, 811; Motey v. Granite Co., 36 U. S. App. 682, 20 C. C. A. 366, 74 Fed. 156; Schofield v. Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125, 29 L. Ed. 224; Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Hayden v. Railway Co., 124 Mo. 566, 573, 28 S. W. 74; Wilcox v. Railroad Co., 39 N. Y. 358, 100 Am. Dec. 440. Every railroad is a menace of danger. It is the duty of every one who approaches it to look both ways, and to listen, before crossing its track; and, when a diligent use of the senses would have avoided the injury, a failure to use them is, under ordinary circumstances, contributory negligence, and should be so declared by the court. Where contributory negligence is established by the uncontroverted facts of the case, it is the duty of the trial court to instruct the jury that the plaintiff cannot recover. See the cases cited supra, and Railroad Co. v. Whittle, 40 U. S. App. 23, 20 C. C. A. 196, 74 Fed. 296, 301; Donaldson v. Railway Co., 21 Minn. 293; Brown v. Railway Co., 22 Minn. 165; Smith v. Railway Co., 26 Minn. 419, 4 N. W. 782; Lenix v. Railway Co., 76 Mo. 86; Railroad Co. v. Dick, 91 Ky. 434, 15 S. W. 665; Aerkfetz v. Humphreys, 145 U. S. 418, 420, 12 Sup. Ct. 835, 36 L. Ed. 758; Powell v. Railway Co., 76 Mo. 80; Dlauhi v. Railway Co., 105 Mo. 645, 654, 658, 16 S. W. 281. But it is only where the undisputed facts are such that reasonable men can fairly draw but one conclusion from them that the question of negligence is considered one of law for the court. Railway Co. v. Jarvi, 10 U. S. App. 439, 451, 3 C. C. A. 433, 53 Fed. 65; Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Railroad Co. v. Pollard, 22 Wall. 341, 22 L. Ed. 277."

This being the law, let us examine the undisputed facts. They appear in the record as follows: William Rossow was a farmer, 32 years of age, living in the vicinity of the village of Wilder, state of Minnesota. He had lived there many years, and was acquainted with the railroad crossing described in the evidence. On December 14, 1899, which was a bright, clear day, he hauled to the elevator at Wilder, on the line of plaintiff in error's road, a load of flax. The railroad at Wilder extends nearly in an easterly and westerly direction. In hauling the load of flax to the elevator, Rossow crossed the railroad from the south to the north. After Rossow had unloaded his flax, and at about 2:30 p. m., he drove out of the elevator at its westerly end, over the unbroken and frozen ground, to the north and south highway over which he had come to the elevator, and, proceeding along this highway with his team at a middling trot, collided with a regular passenger train running on schedule time going north· on the plaintiff in error's road, and was killed. The distance from the west end of the driveway alongside of the elevator to the crossing, measured along the route which Rossow traveled, was 330 feet. Rossow had an ordinary farm wagon, and sat thereon upon a spring seat near the forward end of the wagon box. He had a fur coat on,·

with the collar turned up over his ears as high as the top of his head, and extending forward beyond his face. He wore a cap. While Rossow approached the crossing on his return from the elevator his team traveled at substantially a uniform rate of speed of seven miles per hour. From the time Rossow left the elevator until the collision he neither stopped, looked, nor listened. The engine and train were visible for a time sufficient to have enabled him to stop or turn his horses if he had seen them. The engine whistled about 90 rods before it came to the crossing, and the rumble and roar of the train could have been heard if he had listened. Nine witnesses were at different places around this crossing when the collision occurred. No one of them was so near the crossing that the duty of exercising care to hear and see the train was imposed upon him, yet every one of these nine witnesses was aware of the approach of the train before it reached the crossing. Every one of these nine witnesses received this knowledge in ample time to stop and turn the horses he was driving if he had been in Rossow's place. Every one of them heard the roar and rumble of the train in time to have avoided the collision. Many of them heard the whistle; many heard the bell ring. The two witnesses who were most disadvantageously situated— Malchow and Swanson, who were on the east side of the elevator, so that the train came from past the elevator behind them—heard the bell ring, heard the roar of the train, knew of its approach, and called to Rossow in time to have enabled him to keep off the railroad track if he had been listening. The fact that all witnesses who observed Rossow from the time he left the elevator till his team was struck by the engine saw him do nothing but trot his team down to and upon the railroad track, taken in connection with the fact that every other person about the crossing learned of the approach of the train in time to have avoided the collision, is conclusive either that Rossow did not look or listen, or that, if he did, he utterly ignored what he saw or heard. This state of the evidence also proves that, if Rossow had exercised the care which those who were not approaching the railroad track did exercise,—the mere care inspired by idle curiosity,—he would not have been injured. Greater care was required of him. The railroad itself was a notice of danger. It was his duty to stop if he could not see or hear. It was his duty to put himself in a position where he could clearly see and hear, and thus be assured that there was no approaching train. He did not stop. He covered his ears with the collar of the fur coat, so that he could not hear. He did not look,—for, if he had looked, he would have seen,—but drove blindly, carelessly, upon the train. The evidence in regard to the shying of the off horse has been considered, and we are unable to find any evidence that this fact in any way caused the collision. It was but natural that a horse which was being driven upon a locomotive engine should make some effort to get away from it. There is no evidence that the team was not at all times under the perfect control of Rossow. It is suggested, in opposition to the views herein expressed, that the court ignores the fact that the railroad company was also negligent in not ringing the bell

as required by the statute. This suggestion is without force. The question is, as hereinbefore stated, did the negligence of Rossow directly contribute to his death? If it did, defendant in error cannot recover, even though plaintiff in error was also negligent. To say that contributory negligence cannot be invoked to defeat a recovery only in cases where the defendant is not negligent, would eliminate the defense of contributory negligence from all cases, for, if there is no negligence on the part of the defendant, then there can be no recovery in any event. The facts, as disclosed by the evidence in this case, bring it clearly within the rule announced in the cases hereinbefore cited, and also the recent case of Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014.

For refusing to direct a verdict for the plaintiff in error upon the second ground of the motion made by it, the judgment below must be reversed, and a new trial ordered.