TOMLINSON v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. December 7, 1904.)

No. 2,010.

1. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE OF PERSON KILLED.

Plaintiff's intestate, who was riding alone in a buggy a short time after dark, drove upon a railroad crossing immediately in front of a passing train, and was killed. The highway, crossed the railroad track practically at right angles, and the deceased was acquainted with the crossing. The view was unobstructed, and the locomotive headlight could have been seen when the train was at any point on the track within half a mile or more of the crossing by a traveler upon the highway at any point within 300 feet or more therefrom. *Held*, that the presumption that deceased exercised due care was negatived by the physical facts, which clearly showed that he was guilty of contributory negligence, which, as matter of law, precluded a recovery from the railroad company for his death.

In Error to the Circuit Court of the United States for the District of South Dakota.

About six o'clock in the evening of the 26th of November, 1901, Edwin K. Tomlinson, a traveler upon a country highway in South Dakota, was killed at a railroad crossing by a passenger train of the Chicago, Milwaukee & St. Paul Railway Company. An action was brought under a statute of that state by Hattie Tomlinson, his widow, to recover damages upon the ground that the accident was caused by the negligence of the railway company. The evidence at the trial developed no negligent act or omission, excepting the failure of the engineer to give proper warning of the approach of the train. A prolonged blast of the whistle was blown at least 80 rods from the crossing, but it was not continuously sounded, nor was the bell continuously rung up to the crossing; the duty to do either one of which being prescribed by the state law. The case turned upon the defense of contributory negligence on the part of the deceased.

The highway was laid out upon the section line, and extended east and west. The track of the railway company, in the center of a right of way 100 feet in width, intersected the highway approximately at right angles. Its course varied but slightly from due north and south. Tomlinson, driving a span of horses hitched to a buggy, approached the crossing from the west. No one was with him, and there was no witness who testified concerning any precautions taken by him as he approached the track. The passenger train, with the headlight burning, came from the south, and was running on its schedule time. The deceased was acquainted with the crossing.

Aside from the darkness of the hour, and a mist or fog which it is claimed existed, there was nothing whatever to obstruct the view, for a long distance either northward or southward, of a traveler who was at any point upon the highway within several hundred feet west of the crossing. From the crossing southward the railroad track extended in a straight line for more than half a mile. The adjacent field south of the highway and west of the railroad, over which a view of the approaching train could be had, was separated from the right of way and the highway by a post and wire fence, and was practically level. The railroad track was upon a slight fill, several feet higher than the surrounding country. At a point 100 feet west of the crossing the surface of the highway was but 5½ feet below, and thence arose to the elevation of, the track. The glare of the headlight could easily have been seen when the train was at any point upon the track within half a mile or more south of the crossing, by a traveler upon the highway at any point within 300 feet or more thereof. About a quarter of a mile north of the crossing was Spotswood, a flag station.

The witnesses testified that when the accident occurred—a few minutes before 6 o'clock—it was very dark, but that fact alone would not have prevented the observation of the headlight. One witness,, who lived at a town about five miles southeast of the crossing, was called out of his house about half past 6 by news of the accident. He said that a fog. or mist seemed to be rising from the ground, but he testified to nothing concerning the circumstances of the accident. Another witness lived a short distance east of the track at Spotswood. From where he stood, a little lower than the track, and about a quarter of a mile north of the crossing, he saw the headlight of the approaching train when it was about four miles away. He also heard the noise of its movement just before it reached the crossing. Though busy about his chores, he noticed that the arrival of the train at Spotswood was delayed for some reason. So he went over to the railroad track, looked southward, and saw and observed for some time the headlight while the train stopped at the crossing after the accident. A third witness testified that a mist was rising from the ground, and that it was foggy, particularly in low places. But although he was about three miles northwest of Spotswood, he saw the headlight plainly while the train stopped at that station, shortly after the accident occurred. The fireman, whose customary position was on the west or left side of the cab of the engine, was busy at the coal, and saw nothing of the accident. The enginer testified that when he was about 50 feet from the crossing he discovered the heads of the horses immediately in front of the engine. They came from the west, and appeared to be walking. From his position on the right side of the cab, he was unable to see them sooner. The speed of the train was such that it could not have been stopped in time to have averted the accident.

There was no conflict or contradiction in the evidence. All of the facts were elicited from the plaintiff's witnesses. No witness testified that there was sufficient mist to have obscured a view of the headlight, nor did the evidence warrant even a probability of the existence of such a condition. On the other hand, the proof was direct and positive that the headlight was seen a long distance by witnesses whose positions for that purpose were no more favorable than that of the deceased. At the conclusion of the plaintiff's case, the trial court directed a verdict for the railway company.

T. H. Null, for plaintiff in error.

H. H. Field and John H. Perry, for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The plaintiff relies upon the presumption that, in the absence of evidence upon the subject, the deceased exercised due care to preserve his safety. Texas, etc., Railway v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; Northern Pacific Railway v. Spike, 121 Fed. 44, 57 C. C. A. 384. But this presumption cannot stand against positive and uncontradicted proof, such as was presented in this case; that, had he taken those precautions which the law required of him, he could plainly have seen the approach of the train in time to avoid the danger. Northern Pacific Railroad v. Freeman, 174 U. S. 379, 383, 19 Sup. Ct. 763, 43 L. Ed. 1014; Baltimore, etc., Railroad v. Landrigan, 191 U. S. 461, 474, 24 Sup. Ct. 137, 48 L. Ed. 262.

The presumption of the exercise of due care is at variance with the physical facts. The evidence was so clear as to warrant no other conclusion than that the deceased, by the use of his senses, could have learned of the approach of the train before he reached the crossing; and the necessary inference is that he either did not look, or, having

looked, he endeavored to cross in front of it. He was therefore, as matter of law, guilty of contributory negligence. Garlich v. Railway, (C. C. A.) 131 Fed. 837; Chicago, etc., Ry. v. Andrews (C. C. A.) 130 Fed. 65; Chicago, etc., Ry. v. Rossow, 117 Fed. 491, 54 C. C. A. 313; Chicago, etc., Ry. v. Pounds, 82 Fed. 217, 27 C. C. A. 112; Pyle v. Clark, 79 Fed. 744, 25 C. C. A. 190.

The judgment is affirmed.