ROLLINS v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1905.)

No. 2,182.

1. RAILROADS—KILLING OF PERSON AT CROSSING—PRESUMPTION OF CARE.

The presumption that a person who was struck and killed by a train while driving over a railroad crossing exercised due care to avoid injury is destroyed, where it appears from the undisputed evidence that, if he had looked and listened before driving upon the crossing, he must have seen and heard the train approaching.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1043, 1142.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate, who was a young man, was struck and killed by a train on defendant's railroad, while driving over a crossing at night with a team and top buggy, the curtains to which were down. The evidence showed that the train, which was lighted and with the headlight burning, could have been seen for a long distance before it reached the crossing from any point on the highway within 100 feet or more from the crossing in the direction from which the deceased approached. It was a moonlight night, and the fence, extending from the cattle guard along the side of the highway for 90 feet, had been recently whitewashed. It also fairly appeared that deceased was, to some extent, at least, acquainted with the locality, from which he lived a few miles distant along the highway, and that he knew that such highway crossed the railroad. *Held*, that the physical facts rebutted any presumption that he exercised due care, and that he was chargeable with contributory negligence as matter of law, which precluded any recovery for his death.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1169–1174.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

While W. M. Rollins, a single man 26 years of age, was going from Charles City, Iowa, on the 26th day of November, 1903, to his home, himself and a team of horses that he was driving were killed, and the buggy in which he was riding was destroyed, in a collision with one of the defendant in error's passenger trains, at a public highway crossing known in the evidence as "Warner's Crossing." His administrator brings this suit to recover damages therefor. The highway upon which Rollins was traveling runs east and west. Defendant in error's railroad at the point where the collision occurred runs from northwest to southeast, and crosses the highway at an acute angle. Three hundred and sixty-one feet west of the crossing lives a Mr. Warner, whose house is between the highway and the railroad. Northwest along the railroad from the crossing in question 1,311 feet is another crossing called "Short's Crossing." Northwest along the railroad a mile and a half is the Cedar River Bridge. At a point 108 feet west from the center of the Warner Crossing the Short's Crossing can be plainly seen. The right of way of the railroad is 100 feet, 50 feet each side of the center of the track. There is nothing in the right of way, after you reach the right of way line, to obstruct the view along the right of way to the northwest. A person standing on the highway and looking directly north can see a train coming on the railroad. At a point 50 feet west from the crossing one can see pretty near to the Cedar River Bridge. At a point 100 feet west from the crossing one can see Short's Crossing. The accident occurred between 9 and 10 o'clock at night. The moon was shining and clouds were flying. The depth of the cut in which the railroad track is located, as you leave the Warner Crossing and go west, is 2 or 3 feet. There are some cherry, apple, and plum trees between Warner's house and the Warner Crossing, which partially obstruct the view of the railroad track when one passes along the highway for about two-thirds of the way to the crossing. At a point 200 feet west of the Warner Crossing, on the highway, the surface of the ground is $1\,8/_{10}$ feet higher than the rail of the railway at a point opposite. The height of the bottom of an ordinary passenger car window from the rail is 7 feet and 2 inches. The headlight of the train that collided with the team and buggy was lighted, and the train and cars were lighted. Two witnesses for the plaintiff in error, Charles F. Warner and Anna Wood, who were in the Warner house, with closed windows and doors, heard the noise of the coming train when it crossed Cedar River Bridge. C. P. Warner, in the same house, heard the train for two minutes before it passed the house. Charles Ash and Mrs. Charles Ash, who live 140 rods south of Short's Crossing, heard the train when at said crossing. Maude Johnson, who lives a quarter of a mile east of the crossing in question, saw the headlight of the train beyond Short's Crossing. The train was about four minutes late. It was running from 45 to 50 miles an hour. The

engineer on the train, who was the only person who saw the team immediately prior to the accident, testified that it was only an instant after he saw them that the collision occurred. The buggy had a top, and this top was up. Two hundred feet west from the crossing in question on the highway the distance between the railroad and highway is 90 feet. Rollins, the deceased, made his home with his father, M. W. Rollins, who lived about 30 miles from Charles City, Iowa. The highway on which Rollins was traveling is called the "Charles City Road," and is a main traveled road. Rollins ate supper, on the evening of the day that he was killed, at the house of a Mr. Adams, and, when he left Adams' house on the journey which cost him his life, he was told by Adams to be careful of the cars, to which Rollins replied: "I will be careful. I am pretty careful of that. As far as that is concerned, I could tie up my lines and the team would take me home." The wing fences extending from the cattle guards at the Warner Crossing to the right of way line on either side of the track were newly whitewashed five or six days before the accident. The wing fence, which extended from the north cattle guard along the north line of the highway to the right of way line, by reason of the angle at which the railroad crossed the highway, is from 80 to 100 feet in length. The foregoing facts are those upon which the correctness of the ruling of the court below in directing a verdict must be determined. These facts, with one or two exceptions, appear from the evidence of the plaintiff. Photographs of the physical facts surrounding the place of the accident were introduced in evidence, and were considered by the trial court, and were also furnished to this court for inspection. At the close of all the evidence counsel for defendant in error moved the court to direct the jury to return a verdict in its favor, for the reason that the negligence of the plaintiff in error directly contributed to his death. This motion was granted by the court. The plaintiff in error excepted to the ruling, and now brings the case here for review.

W. A. Smith (Smith & O'Connor, on the brief), for plaintiff in error.

W. J. Knight (H. H. Field, on the brief), for defendant in error.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

CARLAND, District Judge, after stating the case as above, delivered the opinion of the court.

We have had some trouble in settling the bill of exceptions in this case. The record shows that to the proposed bill of exceptions of the plaintiff in error the defendant in error submitted what amounts to 16 pages of the printed record as amendments thereto. Then the plaintiff in error submitted some. At the end of these documents appears the usual allowance thereof by the trial judge as a bill of exceptions. At no place in the bill can a statement be taken as true, without searching the whole record for the purpose of ascertaining whether or not said statement has not been changed or added to by amendment. This labor ought not to be imposed upon this court. We are of the opinion that, when a trial judge has decided what shall appear in the bill of exceptions, counsel should be required to prepare for signature a new draft of the bill as amended, and trust that this may be done in the future. In the absence of evidence as to the acts of the deceased immediately prior to the collision, plaintiff in error is entitled to the presumption that deceased used due care to avoid injury. Texas, etc., Railway v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186;

Northern Pacific Railway v. Spike, 121 Fed. 44, 57 C. C. A. 384. But, as was said by this court in Tomlinson v. C., M. & St. P. Railway, 134 Fed. 233, 67 C. C. A. 218, this presumption cannot stand against positive and uncontradicted proof. Northern Pacific Railroad v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; Baltimore, etc., Railroad v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262. We are satisfied that a fair consideration of the evidence, with all legitimate inferences that may be drawn therefrom in favor of the plaintiff in error, still leaves the case in a position where all reasonable men must draw the conclusion that the deceased was guilty of negligence which contributed to his death. We base our opinion upon the fact that the undisputed evidence shows that, if the deceased had used his senses of hearing and seeing as the law required him to do, he could have seen and heard the train in time to avoid injury. The presumption that the deceased used due care is destroyed by the force of physical facts shown by undisputed evidence, and the inevitable inference must be drawn therefrom that deceased either did not look or listen, or, having looked and listened, he endeavored to cross in front of the train. He was therefore, as matter of law, guilty of contributory negligence. Garlich v. Railway, 131 Fed. 837, 67 C. C. A. 237; Chicago, etc., Railway v. Andrews, 130 Fed. 65, 64 C. C. A. 399; Chicago, etc., Railway v. Rossow, 117 Fed. 491, 54 C. C. A. 313; Chicago, etc., Railway v. Pounds, 82 Fed. 217, 27 C. C. A. 112; Pyle v. Clark, 79 Fed. 744, 25 C. C. A. 190.

It is urged by plaintiff in error that there is no evidence in the record that deceased knew that he was approaching a railroad track. We think that the evidence discloses such a state of facts as to warrant the court in fairly presuming that the deceased must have known that the highway on which he was traveling crossed a railway track at or near the place in question. The highway upon which he was traveling was a main traveled road between the home of deceased and Charles City. It ran through an old settled country with towns and villages scattered throughout the locality. Deceased was 26 years old, unmarried, and lived at his father's home, and had lived there, so far as it can be gathered from the evidence, for some time, and deceased and his team were well known by people living in the vicinity of the accident. When warned by Mr. Adams, as deceased started on his journey home, to look out for the cars, his reply indicated that he was aware that there was a necessity of looking out for the railroad trains. The wing fences at the Warner Crossing were recently whitewashed. The wing fence extending from the railroad track southwest along the highway was some 90 feet long. Ordinary care required deceased to heed these facts. Steinhofel v. C., M. & St. P. Railway Co. (Wis.) 65 N. W. 852.

There were exceptions taken in the court below to several rulings of the court on the admission of evidence; but, as said rulings did not affect the result, they need not be considered.

The judgment below is affirmed.