RICH v. CHICAGO, M. & ST. P. RY. CO.*

(Circuit Court of Appeals, Eighth Circuit. November 12, 1906.)

No. 2,400.

1. RAILROADS—LICENSEES—DEATH—NEGLIGENCE—EVIDENCE.

In an action for the death of a pedestrian while crossing defendant's railroad track, the engineer and fireman of the engine that struck deceased, and two others who stood near by, and in front of the engine, testified that the bell was constantly ringing as the engine was being backed toward the place of the accident. *Held* that evidence of witnesses, who were not paying attention to the engine at the time, and were not necessarily in a position to have heard any bell ring or whistle sound before the accident, that they heard neither bell nor whistle, was insufficient to constitute a substantial conflict and warrant a finding that defendant was negligent in failing to ring the bell or sound the whistle.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1356–1359; vol. 20, Evidence, §§ 2432–2435.]

2. SAME—SIGNAL LIGHTS.

Where a witness testified that when he came up to defendant's railroad track where decedent was hurt, he noticed there was no light on the tender of the engine that struck decedent, such evidence was sufficient to charge defendant with negligence in failing to carry a light on the rear of the tender of the engine to warn pedestrians of its approach.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1358.]

* Rehearing denied February 27, 1907.

3. SAME—LICENSEES—CONTRIBUTORY NEGLIGENCE.

That defendant railroad company permitted the public, including de-cedent, to use its yards as a common passageway, and thereby obligated itself to observe ordinary care to avoid injuring them, did not relieve decedent from the obligation to use ordinary care for his own safety.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 891–897, 1286.]

4. DEATH—PRESUMPTIONS—SELF-PRESERVATION.

In an action for wrongful death, the presumption that decedent was in the exercise of due care based on the instinct of self-preservation is inapplicable where the surrounding facts and circumstances conclusively establish his contributory negligence.

5. RAILROADS—PERSONS ON TRACK—LICENSEES—DEATH—CONTRIBUTORY NEGLIGENCE.

Decedent, a man 39 years old, possessed of unimpaired senses of sight and hearing, undertook for his own purposes to cross defendant's railroad tracks in a yard on a dark night when he knew engines and cars were liable to be constantly moving on them. On reaching one of the tracks on which a large road engine and tender was backing at the rate of six miles an hour, he stepped on the track and was run over and killed before he could escape. The engine was necessarily making much noise, and the bell was being constantly rung, though there was no light on the tender. Held, that the physical facts conclusively established that he was guilty of contributory negligence as a matter of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1294.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Charles A. Dickson (Sam Page, on the brief), for plaintiff in error.

W. H. Farnsworth (Delos C. Shull and J. U. Sammis, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was an action instituted under authority of the statutes of Iowa by Carrie Rich, as administratrix of the estate of Hamilton Rich, deceased, to recover damages occasioned by his death. The scene of the accident was the switching yard of defendant company in Sioux City, Iowa. In this yard defendant stores its cars when not in use, and makes up its trains for use. It extends from Third street on the north to a little beyond Second street on the south and from what was known as Division street on the east, six or seven blocks westerly. South of and contiguous to the defendant's yard are located the yards of other railroad companies, so that the entire region south of Third street and west of Division street for several blocks is used almost exclusively for yard purposes. Besides making use of its yard for the purposes indicated, defendant's main line for Chicago on the east and for South Dakota on the west runs through it. East of and near to Division street is located defendant's roundhouse, and its locomotives are driven back and forth upon its tracks through the yard when beginning or ending their runs. In these several ways the yard is constantly the scene of great business activity by the defendant. Decedent had lived for some weeks on the north side of Third street in full view of the yard and

was familiar with all the uses made of it by defendant. At about 8:30 p. m. of May 17, 1904, the evening being dark, he left his home for some undisclosed purpose; went south a distance of some 200 or 300 feet and apparently was endeavoring to walk across a space covered by seven or eight parallel railway tracks, with the usual accompaniment of switches, guards, and frogs, when he was struck and killed by an engine slowly backing from the west to the roundhouse. It was found later that his shoe had been caught in a frog; the sole and heel of it were found wedged or made fast in the frog after the engine had passed by. Plaintiff in her petition charged that defendant had so permitted the public to cross its yards as to establish an implied license to do so; thereby obligating itself to the exercise of watchfulness and care in switching its cars and operating its engines and trains, with due regard to the rights of licensees. She further charged as the specific acts of negligence on defendant's part which resulted in the death of her husband: (1) That the engine which ran upon him was being operated at a high and unlawful rate of speed; and without (2) ringing a bell; (3) sounding a whistle; (4) maintaining a lookout; or (5) carrying a light on the rear of the tender, to warn pedestrians of its approach. Defendant denies the alleged negligent acts, and pleads contributory negligence on the part of decedent.

There is some evidence of the use of the yard by workingmen and their children going to and returning from the bridge which crosses Floyd river on the way to Cudahay's packing house where they were working; but if the decision of this case depended upon establishing the existence of a license in favor of the public to traverse defendant's tracks we should have great doubt as to the sufficiency of the evidence to establish it. But, in the view we take of other questions, it is unnecessary to discuss this one. There is no evidence tending to show that the engine was being backed at a high or improper rate of speed. On the contrary, it was conclusively shown, and is so conceded in argument by plaintiff's counsel that the engine was moving at a very moderate rate of speed. Was there any evidence that no bell was rung or whistle sounded by those in control of the engine as it approached the place where the decedent was attempting to cross the track? Carrie Rich, the widow of decedent, testified that she and a neighbor were standing on her back doorstep at the time her husband left the house. The place where he was hurt was more than a block south from the house, on a track running east and west between two others on each of which stood strings of cars, while another string of cattle cars was standing across Division street, a short distance east. She and her neighbor, with whom she was at the time visiting, testified merely that they did not hear any bell ring or any whistle sound before the accident occurred. They gave no reasons indicating that they would have heard either if it had rung or sounded. Moreover, the proof shows that their attention was not in any manner directed to what was going on in the yard. They say they heard a shout or scream, which was either simultaneous with or after the accident, and that it was the first incident that directed their attention to the yard that evening. The proof shows that they were neither actual observers of the condition of things attending the accident, nor were their situation or engagements such

149 F.—6

as would likely have enabled them to know anything about the operation of the particular engine in question prior to the accident.

The only other witness who testified for plaintiff on this subject was Ed Wilson, who stated that after decedent left his home he started and followed about half a block behind him. He testified that his attention was not called to any of the circumstances attending the accident until after he heard a cry or loud groan (probably the one emanating from the decedent at the time he was hurt) ; that on hearing the cry, he ran and got to the decedent about two minutes after the accident occurred. He said he did not see the engine backing down because there was a string of cars between him and it, and that there was another string of cars on the south side of the engine as it backed eastwardly. Situated as thus indicated, with no actual observation of the operation and with a string of cars so intervening between him and the engine as to make notice of its operation unlikely, this witness also said he did not hear any bell ring or whistle sound. Like the other two witnesses, he did not give any reasons why he would likely have noticed either if it had occurred, and his occupation at the time was such as afforded him neither interest in what was going on nor favorable opportunity to observe it.

In these circumstances the evidence under consideration was purely of a negative character and does not commend itself to common intelligence or common experience as of any value. The witnesses may not have heard any warning given and yet it may have been given. The value of such evidence depends upon the existence of facts showing the likelihood that the warning would not have been given if the witnesses did not hear it. Such facts are absent in this case and we are left with the bald statement that the witnesses did not hear the warning as the only evidence that it was not given. They lived close to the yard and, as common experience teaches, had doubtless become so accustomed to the constantly ringing bells and sounding whistles as to be totally indifferent to them. As against this kind of evidence there is the positive testimony, unchallenged as to credibility, of the engineer and fireman who were at work on the engine in question, and two others who stood near by and in front of it as it was moving eastwardly, that the bell on the engine was constantly ringing as it was being backed eastwardly that night. This evidence afforded by the two men whose duty it was to ring the bell, and by two others who actually saw the engine and noted its operations is positive and unequivocal in its character. The testimony of plaintiff's witnesses, on the other hand, was of such a character, and attended by such circumstances as to be entirely true without affording any evidence of the fact sought to be established. This court has heretofore decided that in circumstances of the kind just disclosed there is no real conflict of evidence.

In the case of Chicago, etc., Ry. Co. v. Andrews, 64 C. C. A. 399, 130 Fed. 65, speaking by Judge Van Devanter it said:

"But where the attention of those testifying to a negative was not attracted to the occurrence which they say they did not see or hear, and where their situation was not such that they probably would have observed it, their testimony is not inconsistent with that of credible witnesses who were in

a situation favorable for observation, and who testify affirmatively and positively to the occurrence."

In the case of Baltimore & O. R. Co. v. Baldwin (C. C. A.) 144 Fed. 53, the Circuit Court of Appeals for the Sixth Circuit examined the question now under consideration and announced its conclusion in the following words:

"The result must be that purely negative testimony is not substantive, and amounts at most to nothing more than a mere scintilla."

To the same effect are the following cases: Stitt v. Huidekoper, 17 Wall. 384, 21 L. Ed. 644; Horn v. Baltimore & O. R. Co., 4 C. C. A. 346, 54 Fed. 301; Hubbard v. Boston & Albany Railroad, 159 Mass. 320, 34 N. E. 459; Culhane v. New York Central & H. R. R. Co., 60 N. Y. 133, 137. In the last-mentioned case, the Court of Appeals of New York had facts before it quite apposite to those now before us and said concerning them as follows:

"It is proved by the positive oath of the two individuals on the engine—one of whom rang it, and by two others who witnessed the occurrence and heard the ringing of the bell. The two witnesses for the plaintiff merely say they did not hear the bell, but they do not say that they listened or gave heed to the presence or absence of that signal. * * * As against positive, affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it, to authorize the submission of the question to the jury. It must appear that they were looking, watching and listening for it, that their attention was directed to the fact, so that the evidence will tend to some extent to prove the negative. A mere 'I did not hear' is entitled to no weight in the presence of affirmative evidence that the signal was given, and does not create a conflict of evidence justifying a submission of the question to the jury as one of fact."

While the foregoing rule is a valuable one to prevent speculative and unwarranted verdicts and should be fearlessly applied in appropriate cases, no liberty should be taken by the trial judge under its supposed protection to weigh the force or value of evidence which is substantially contradictory. Where "circumstances attending the failure to notice an occurrence are such as afford reasonable ground to believe that if the occurrence had happened it would have been noticed by the witness, the failure to notice it may be and frequently is some evidence that it did not occur and should go to the jury for its consideration;" but when, as in this case, the failure to notice an occurrence is attended by no facts or circumstances tending to show that the witnesses would likely have noticed it if it had occurred, it should never be availed of to excuse an unwarrantable verdict. There was no evidence to support the fourth specification of negligence, namely, that the defendant failed to maintain a lookout to warn the decedent of the approach of the engine.

Concerning the fifth specification, Ed. Wilson testified that when he came up to the track where decedent was hurt he noticed there was no light on the tender of the engine. This is affirmative and positive testimony, and while it is denied by other witnesses, it constituted some evidence of the fifth act of negligence charged. We are therefore required to consider the other branch of the case relating to con-

tributory negligence. If the defendant had so permitted the public, including decedent, to use its yards as a common passageway and thereby obligated itself to the observance of ordinary care to avoid injuring them, and even if it was guilty of negligence in not maintaining a light on the rear of the tender as it backed eastwardly on the evening in question, these facts would not have relieved decedent from the obligation imposed by law to take ordinary precaution for his own safety. Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542. If he failed to do so and if such failure contributed in any degree to his death his personal representative cannot recover. If, from all the proof and the just and reasonable deductions from it, the contributory negligence is so conclusively established that all reasonable men in the exercise of an honest and impartial judgment would so say it was the duty to declare as a matter of law that no recovery could be had. Chicago G. W. Ry. Co. v. Price, 38 C. C. A. 239, 97 Fed. 423, 428; Chicago G. W. Ry. Co. v. Roddy, 65 C. C. A. 470, 131 Fed. 712; Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. Counsel for plaintiff recognizes the foregoing well-settled rules, and in endeavoring to exculpate the decedent from the charge of contributory negligence urge that the instinct of self-preservation is so strong as to create a presumption evidential in its character that the decedent was in the exercise of due care, and that that presumption was sufficient evidence to take the case to the jury. The presumption referred to is like other presumptions of fact. It is available in cases where there is an absence of evidence showing the actual occurrence, but like other presumptions it ceases in the light of actual facts. We recognize its evidential value in the former class of cases, as illustrated by Texas & Pac. Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186, and Northern Pac. Ry. Co. v. Spike, 57 C. C. A. 384, 121 Fed. 45, but this court on repeated occasions has recognized and enforced limitations attending its use.

In Tomlinson v. Chicago, etc., Ry. Co., 67 C. C. A. 218, 134 Fed. 233, 234, it is said that:

"The presumption cannot stand against positive and uncontradicted proof such as was presented in this case, that had he taken those precautions which the law required of him he could plainly have seen the approach of the train in time to avoid the danger. * * * The presumption of the exercise of due care is at variance with the physical facts."

In Rollins v. Chicago, etc., Ry. Co., 71 C. C. A. 615, 139 Fed. 639, it is said:

"The presumption that the deceased used due care is destroyed by the force of physical facts shown by uncontradicted evidence, * * *" etc.

In Wabash R. Co. v. De Tar, 73 C. C. A. 166, 141 Fed. 932, 934, it is said:

"Because the natural instinct of self-preservation generally prompts men to acts of care and caution when approaching or in the presence of danger, there is, in the absence of credible evidence of the actual fact in any instance, a presumption of the exercise of due care and caution. * * * But it is a presumption of fact, not of law, and, like other presumptions arising from the ordinary or usual conduct of men, rather than from what is invariable or

universal, it is disputable, and cannot exist where it is incompatible with the conduct of the person to whom it is sought to apply it."

Do the actual facts of this case countervail the presumption? Decedent was in the meridian of life, 39 years old, possessed of unimpaired senses of seeing and hearing. He undertook, for purposes of his own, to cross the tracks of the defendant in a dark night, when, as known by him, engines and cars were liable to be constantly moving on them. He reached one of the tracks upon which an engine with tender was backing. The engine was a large road engine going at about a rate of six miles per hour and necessarily making much noise. Its bell, as seen from the evidence already considered, was being constantly rung. Notwithstanding these facts he stepped upon the track and was run over and killed by the approaching engine.

In the light of the foregoing facts, and in view of the following considerations we do not think he exercised ordinary care. It was of doubtful prudence on his part to venture upon defendant's tracks in the darkness of the night when he knew they were subject to constant use as already indicated. The tracks were warnings of danger, and the known and frequent use of them required the greatest circumspection on his part, both by looking and listening for the approach of an engine or train of cars. He could not have looked or listened as he entered upon the track. If he had looked attentively, he would have seen the large road engine that moment making its way towards him on the track he was just about to step upon. If he had listened, he would have heard the rumbling noise or the ringing of the bell. If, notwithstanding these obvious and indispensable precautions, he saw fit to try to make the crossing in advance of the engine, he was guilty not only of want of ordinary care, but of great recklessness. If he had not looked or listened he was, according to all authority and reason, guilty of negligence in not taking that reasonable precaution to prevent exposure which his environment imperatively demanded. His environment was such that he ought reasonably to have anticipated danger at every step, and every precaution suggested by the alert and attentive use of all his senses should have been taken. This he failed to take. The physical facts, in our opinion, conclusively show that he must have thoughtlessly and heedlessly stepped upon the track, and that he did so almost simultaneously with the approach of the engine (for he was not able to cross the track before he was hit by it); or they show that he entered upon the track prior to the approach of the engine and caught his foot in a frog, and was so held as to disable him from completing the crossing before he was injured. The latter contingency is not presented by his counsel, and no claim is made that the existence of the frog, blocked or unblocked, in defendant's switching yard is in itself such evidence of negligence as to constitute the basis of an action. For apt illustrative cases denying plaintiff's right of recovery because of his contributory negligence, reference may be made to the following cases: Rollins v. Chicago, etc., Ry. Co., supra; Tomlinson v. Chicago, etc., Ry. Co., supra; Missouri Pac. Ry. Co. v. Moseley, 6 C. C. A. 641, 57 Fed. 921; Tucker v. Baltimore & O. R. Co., 8 C. C. A. 416, 59 Fed. 968; St. Louis, etc., R. Co. v. Chap-

man, 71 C. C. A. 523, 140 Fed. 129; Ames v. Waterloo, etc.; Company, 120 Iowa, 640, 95 N. W. 161.

We think the learned trial judge of the Circuit Court committed no error in directing a verdict for defendant, and its judgment is affirmed.