FRANCHINA v. CHICAGO, B. & Q. R. CO.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1912.)

No. 3,633.

1. TRIAL (§ 143*)—DIRECTION OF VERDICT—POWER OF COURT.

A conflict of a substantial character in the evidence bearing on a material issue necessitates a submission of the issue to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

2. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO EMPLOYÉ—WORKING ON TRACK—QUESTIONS FOR JURY.

Plaintiff's intestate was struck and killed by a train while engaged with a number of others in doing repair work on defendant's railroad track. The men were strung along the track for nearly half a mile, and deceased was the last one reached by the train, and was working alone several hundred feet from the nearest group. The negligence alleged by plaintiff was that no signal was given of the train's approach. Other workmen who were standing to one side while the train passed testified that they did not hear any signal, and one or more testified positively that the bell was not rung, nor the whistle sounded. This testimony was contradicted by the engineer and fireman. Held, that the witnesses for plaintiff were in such situation that they should have heard the signals if given, and their testimony could not be ignored, and that it created such a substantial conflict in the evidence upon the vital issue in the case that it was error to direct a verdict for defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action at law by Francesco Franchina, as administrator of the estate of Antonio Sirignano, deceased, against the Chicago, Burlington & Quincy Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

This was a suit instituted by Francesco Franchina, as administrator of the estate of Antonio Sirignano, to recover damages, for and on behalf of the widow and minor children of the deceased, alleged to have been occasioned by the negligence of defendant's servants and agents in the operation of one of its trains. The specific charge of negligence is that while the deceased was engaged in repair work on the track near to the village of Newport, in the state of Minnesota, the defendant propelled a train of cars along its track without giving any warning signal either by bell or whistle, or in any other manner, and thereby negligently caused the same to run over the deceased, and so injure him that he died. The defense consisted of a general denial of the allegations of negligence only.

The case was submitted to the jury on evidence tending to show the following facts: The deceased was one of a gang of 40 or 50 men engaged in repairing the railroad track running along the bluff of the Mississippi river six or seven miles south of St. Paul. The men while at work were strung

along the track a distance of one-fourth to one-half of a mile. They generally worked in groups, but, on this particular occasion, the deceased was working by himself, spiking rails to the ties. He was near the southern end of the force, a distance variously stated by the witnesses of from 10 to 20 rails—330 to 600 feet—away from any group of his coemployés. While the men were so disposed along the track, a local passenger train running from St. Paul to La Crosse, propelled at a rate of speed variously estimated from fast to slow, ran over and killed the deceased while he with his back toward the train was in the act of driving home a spike. Witnesses who were standing by the side of the track as the train approached and passed them, north of where the deceased was at work, testified that no bell was rung or whistle sounded as the train advanced towards the deceased. One witness who was carrying drinking water for the workmen was on the side of the track very near to the deceased when he was struck. He testified that there was neither a bell rung nor a whistle sounded nor any other warning given of the approach of the train whatsoever. Another witness standing within 150 to 200 feet from the deceased testified that the train approached him quietly, "making no noise at all," and that he heard no whistle sounded or bell rung. Another witness testified that he was working 10 or 12 rails north of where the deceased was working at the time he was struck; that on former occasions the train had usually stopped near to a certain tool box some 40 or 50 rails north of that place; that, on the morning in question, it did not stop there, but went ahead until after it struck the deceased; that he noticed the engineer in charge of the train; that he had his head out of the window where he was sitting, looking back and towards St. Paul; that he heard no whistle sounded or bell rung as the train advanced. He testified that the bell had been usually rung on other mornings, but he emphatically stated that it was not rung that morning and no whistle was sounded. This witness also testified that the boss of the gang had usually warned the workmen of the approach of the train, but that, even if he hallooed on the morning in question, it was an ineffectual warning for all of the men, as they were scattered along the road for a distance of half a mile or so; and two of the witnesses for plaintiff who were nearest to him testified that the boss gave no warning to the deceased of the approach of the train. The testimony of these witnesses was contradicted in many particulars by the engineer, fireman, and yard foreman of the defendant. The first two emphatically denied that there was no blowing of the whistle or ringing of the bell; but asserted that both were sounded as the train approached the deceased.

The Chicago, Milwaukee & St. Paul Railway Company had a track of its road closely parallel to that of the defendant company along the bluff at the place where the deceased met his death, and on that morning a fast mail train running from Chicago to St. Paul met the defendant's train at that place. That train running at full speed scattered dust and gravel among the workmen on the defendant's track, and made much noise and confusion as it approached and passed. This tended to deaden any sound of personal warning or otherwise which might have been given of the approach of the train from St. Paul over the track of the defendant. On this evidence the learned trial court sustained a motion made by defendant and instructed a verdict in its favor, and that action presents the controlling question on this writ of error.

John W. Willis, for plaintiff in error.

Arthur A. Stewart (Morton Barrows, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). The rule governing the action of a trial court on a motion for an instructed verdict has been variously stated in the following cases: Southern

Pacific Co. v. Pool, 160 U. S. 438, 440, 16 Sup. Ct. 338, 40 L. Ed. 485; Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 659, 21 Sup. Ct. 275, 45 L. Ed. 361; Speer v. Board of County Com'rs, 32 C. C. A. 101, 88 Fed. 749; Chicago G. W. Ry. Co. v. Price, 97 Fed. 423, 38 C. C. A. 239, 243.

[1] In any phase of the rule announced in these cases, a conflict of a substantial character in the evidence bearing upon a material issue forbids summary action by the court, and necessitates a submission of the issue to the jury.

[2] The issue of fact tendered by the plaintiff and accepted by the defendant was whether the defendant gave any warning either by bell, whistle, or otherwise of the approach of its train which ran upon and killed the deceased. Whether any such warning was given was therefore a material and decisive question of fact in the case. Three witnesses, who stood close by the track as the train approached and who were apparently in a position to hear any signal if it were given, testified that they heard nothing of the kind; and one testified that his attention was attracted to the engineer, and noticed that he was looking backward in the direction of St. Paul, instead of in front, and that he not only did not hear any such signal, but that none was in fact given. The contention is that the testimony of these witnesses was negative in its character, and of no probative force as against the affirmative testimony of the witnesses for the defendant who testified that the bell was rung and the whistle blown. Attention is called to the cases of Chicago & N. W. Ry. Co. v. Andrews, 64 C. C. A. 399, 130 Fed. 65, Rich v. Chicago, M. & St. P. Ry. Co., 78 C. C. A. 663, 149 Fed. 79, and Chicago, R. I. & P. Ry. Co. v. Stepp, 90 C. C. A. 431, 164 Fed. 785, 22 L. R. A. (N. S.) 350, and cases there cited, in support of this contention; but we think those cases are inapplicable to the facts of this case. In all of them distinction is carefully drawn between testimony of a witness who was not in a situation to hear the signals if they had been given and one who was in such situation or whose attention was at the time specially directed to the facts and circumstances of the case.

In our last utterance on the subject, found in the Stepp Case (supra), we said:

"Again, if a witness situated so he could hear the signals, and of such experience that he would have been likely to notice them if they had been given, testifies that he did not hear them, the credibility of his evidence is for the jury, unless there is proof that his attention at the time was absorbed in some other matter. Finally, if the attention of a witness is especially directed to the train and its signals, and at the time a distinct impression is made upon his mind that the signals are not given, his testimony is in every particular as trustworthy, though negative, as would be the evidence of another witness similarly situated affirming that the signals were given."

The proof in this case as detailed in the statement tends to show that three men of experience standing in close proximity to the train as it advanced toward deceased, who might have heard any signal if it had been given, and whose attention does not appear to have been absorbed on any other subject, testified that they did not hear the ringing of any bell or the sounding of any whistle or the caution-

ary warning of any boss or anybody else as the train came along. One of these witnesses had his attention specially called to the action of the engineer of the train, and he testified not only that he did not hear any bell rung or whistle sounded, but that no such signal was in fact given. This evidence was substantial in its character and in sharp conflict with that of defendant on a material issue, and was clearly for the jury to weigh and consider in reaching a verdict in the case.

Some argument was made at the bar in support of the ruling of the trial court that the deceased was guilty of such contributory negligence as defeated plaintiff's action, but that was an affirmative defense, and should have been pleaded if the defendant had deemed it available. It was not only not pleaded but no issue of that kind was tried below, or no instruction asked or given on the subject. Hence we cannot now give it any consideration.

The learned trial judge disposed of the case on the sole ground that there was no substantial evidence of a failure to give the signals referred to. In this we think he erred. The judgment must be reversed, and the cause remanded to the court below, with directions to grant a new trial.