## BOSTON & M. R. R. v. TITCOMB.

(Circuit Court of Appeals, First Circuit. August 29, 1916.)

### No. 1186.

1. NEGLIGENCE ☞122(1)—ACTIONS—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

Under the rule of the federal courts, the burden of proving contributory negligence in an action for personal injury rests on the defendant.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 221, 229, 233, 234; Dec. Dig. ☞122(1).]

2. RAILROADS ☞333(1)—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Deceased was struck and killed by the engine of a train on defendant's railroad as he was walking over a crossing in the evening. He was familiar with the crossing, and the path by which he approached it ran for some distance parallel to or near the tracks. The whistle cord on the engine was broken, and the whistle was not sounded for the crossing; but the bell was rung continuously, and the headlight could be seen for half a mile before the crossing was reached. Deceased was a young man in full possession of his senses. *Held*, that he was chargeable with contributory negligence in failing to look before going upon the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1080, 1083; Dec. Dig. ☞333(1).]

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action at law by Edward S. Titcomb, administrator of the estate of Charles F. Gray, deceased, against the Boston & Maine Railroad. Judgment for plaintiff, and defendant brings error. Reversed.

Leslie P. Snow, of Rochester, N. H. (Hughes & Doe, of Dover, N. H., on the brief), for plaintiff in error.

Andrew Jackson, of Rochester, N. H. (Jackson & Hurlburt, of Rochester, N. H., and Remick & Jackson, of Concord, N. H., on the brief), for defendant in error.

Before PUTNAM and DODGE, Circuit Judges, and BROWN, District Judge.

DODGE, Circuit Judge. Charles F. Gray was struck and killed on April 15, 1914, by an engine drawing a passenger train, at or near the Knight Street grade crossing in Rochester, N. H. The defendant

in error, his administrator, hereinafter called plaintiff, recovered judgment against the railroad in the District Court for the benefit of Gray's widow and parents, dependent on him for support, under New Hampshire Public Statutes, c. 191, §§ 8–13. The railroad seeks here to reverse the judgment because of the trial judge's refusal to direct a verdict in its favor, refusals to rule in accordance with its requests, and the admission of certain testimony against its objection.

The train was a local passenger train from Boston, due at the Rochester Station, half a mile or more north of the crossing at 6:47 p. m. It was about 13 minutes behind time, and a connection was to be made at Rochester. The evidence was conflicting as to its rate of speed, but the jury might have found that it was running over 40 miles an hour, twice as fast as it usually ran at that place.

In trying to whistle for the Hancock Street crossing, half a mile south of the Knight Street crossing, the whistle cord on the engine had broken, and four whistling posts, including that for the Knight Street crossing, had been passed by the engine, before Gray was struck, without sounding any whistle. That a finding of negligence on the railroad's part for the above failure to sound the whistle would have been warranted by the evidence is not disputed. There was, however, uncontradicted evidence that the bell was kept ringing from the time the whistle was disabled.

[1] The burden was not upon the plaintiff to prove Gray's due care, but upon the railroad to prove that Gray's negligence contributed to cause his death, according to the ordinary rule in the federal courts. Central Vt. Ry. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252. We find nothing in the New Hampshire statute under which the suit is brought making due care on the part of the person killed a fact necessary to be shown in order to obtain the recovery allowed.

[2] Gray had left his house alone a few minutes before 7 o'clock on the same evening, to go to a moving picture exhibition. His house was east of the tracks and south of the Knight Street crossing. The exhibition he intended to visit was west of the tracks. His usual way of reaching it was by a path running at first diagonally toward the tracks, then for about 130 feet parallel with, and 15 or 20 feet distant from, them, then by a smaller path intersecting the first about 30 feet from the crossing, running diagonally across the railroad location along the easterly side of the tracks to the crossing, thence, by the crossing, over the tracks. By going diagonally across the tracks so as to reach the crossing west of the first track, instead of keeping on its easterly side until the crossing was there reached, distance could be saved, there was nothing in the way to prevent doing this, and people sometimes did it.

With the exception of one witness who saw Gray on the path not far from his house, no witness called by the plaintiff saw him after he had left his house until he was found lying on the ground on the northerly side of Knight street, several feet easterly from the railroad tracks, so badly injured that he died within two hours. He was found

there immediately after the train had passed the crossing; and in passing it the brakes on the train had been suddenly applied, so as to bring the train to a full stop north of the crossing before it had reached the Rochester Station. None of the plaintiff's witnesses saw the train strike Gray, or undertook to say where he was when it struck him.

The planking at Knight street crosses several tracks; that upon which the train which struck Gray was running being the one furthest to the eastward. Evidence offered by the defendant tended to show that Gray was seen a few seconds before the train struck him, north of the point at which the smaller path diverged from the path parallel with the tracks, walking near the easterly side of the track referred to, toward the crossing, "at the edge of the ties," according to one witness, or "outside the rail on the ties," according to another. The evidence referred to tended to show either that he had not actually reached the planked crossing when struck, or at most left it doubtful whether he had actually reached it or not. We assume in the plaintiff's favor that he had reached the planking before he turned across the track and was not a trespasser when struck. The engineer of the train testified, as to his first sight of Gray:

"I saw him step into the light of my headlight, step out of the darkness into the light of my headlight, about 30 feet from the front end of the engine."

According to the testimony from both sides, the sky was overcast, but there was no rain. Although it was misty, and some of the witnesses called it foggy, there was no dispute that the headlight of an approaching train could have been seen without difficulty, by any one who looked, from the easterly side of the tracks at Knight street, at least as far south as the Hancock street crossing, one-half a mile away along a straight track; or that a like view for the same distance, unobstructed except by the usual telegraph poles, could have been had from any point on the smaller path last above mentioned, or from any point on the path parallel with the tracks out of which it led. That in approaching the crossing Gray had ample opportunity to see whether or not the track was clear of trains approaching from the southward, and within half a mile of the point where he was intending to cross, there could be no doubt whatever.

Gray, employed at the time in a shoe factory in Rochester, was a young man, in full possession of his senses, and was perfectly familiar with the locality. At the Knight street crossing there were no gates, but there were gates at the Main street crossing, 87 feet further north; these were down, having been lowered for this train, and they had lanterns on them.

In our opinion, the only reasonable conclusion permitted by the undisputed facts was that failure on Gray's part to exercise ordinary care for his own safety was the cause of his death. The crossing and its surroundings were well known to him, as he approached it the headlight of the train was plainly visible, if he had used his senses he could not have failed to see and hear the train, even though it did not whistle, and in order to see it he had only to look around; yet he went

upon the track directly in front of it. A freight train bound southward was moving over the crossing upon the westernmost track. It had just cleared the crossing, and it is said that this might have confused him or distracted his attention. But this circumstance, like the fact that it was dark at the time, seems to us one which called upon him for special caution before going upon the tracks at all. We are unable to consider this or any of the circumstances shown sufficient to excuse his want of care in going upon them when he did. There was nothing in the circumstances which can reasonably be supposed to have deceived him into thinking that no train was likely to be passing at that time. Horan v. Boston & Me. R. R., 183 Fed. 559, 106 C. C. A. 535.

The presumption that Gray stopped, looked, and listened before he went upon the track, we think overcome by the circumstances shown; these being in our opinion such that there could have been no injury had the injured person taken reasonable precautions for his own safety. Tomlinson v. Chicago, etc., Ry. Co., 134 Fed. 233, 67 C. C. A. 218; Rollins v. Chicago, etc., Ry. Co., 139 Fed. 639, 71 C. C. A. 615; Wabash, etc., Co. v. De Tar, 141 Fed. 932, 73 C. C. A. 166, 4 L. R. A. (N. S.) 352.

Evidence tending to show, as was claimed, that Gray had been habitually careful about stopping, looking, and listening when approaching this crossing on previous occasions, was admitted against the defendant's objection. In the view we take of the case, we need not consider the question of its admissibility. We think it insufficient in any event to justify any conclusion that he used due care upon this occasion.

Nor can we regard the evidence as sufficient to warrant the jury in finding that there was gross and willful disregard of the rights of others on the railroad's part, such as rendered it liable whether Gray's negligence contributed to his injury or not.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; and the plaintiff in error recovers its costs of appeal.